Milton M. Haven, J.
The defendant is charged with violating subdivision 6 of section 2147 of the Penal Law, known commonly as the “ Sabbath ” or “ Blue ” laws. He is charged with selling uncooked fresh meat, to wit: one sirloin steak and five pork chops on Sunday, February 28,1965 at 11:15 a.m.
Defendant moved this court for a dismissal of the information upon the ground that he was denied equal protection of the law. While the constitutionality of the law itself is not in issue, he urges that the statute was enforced in a discriminatory manner against him, thus violating the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York State Constitution.
The defendant is an officer and stockholder of the Active Markets, Inc., a grocery establishment in the City of Poughkeepsie. It is uncontradicted that the company store was open on Sunday, February 28, 1965, and that the defendant conducted business on that day.
The defendant’s motion for a dismissal of the charge is, thus, based solely upon the ground of an alleged discriminatory enforcement of section 2147 of the Penal Law.
In considering this application the test to be applied can be found in the case of Yick Wo v. Hopkins (118 U. S. 356, 373-374), where it was held that: ‘ ‘ Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution”.
The procedure to be followed in applying this principle of law is found in the case of People v. Utica Daw’s Drug Co. (16 A D 2d 12,16), where the court held that the defendant’s claim of discriminatory enforcement should not be treated as a defense raised at the trial, but rather that the court “ should take the *910 evidence in the absence of the jury and should decide the question itself. If the court finds that there was an intentional and purposeful discrimination, the court should quash the prosecution ”.
Pursuant to the authority set down in the Utica Daw’s case (16 A D 2d 12, supra), a hearing was held before me. Testimony was taken and decision was reserved.
While conducting this hearing the court was cognisant of the rules laid down in several significant cases. In the Utica Daw’s case the court stated (p. 19): “A heavy burden rests on the defendant to establish conscious, intentional discrimination ’ ’. Moreover, a discriminatory purpose is. not presumed, according to Tarrance v. Florida (188 U. S. 519, 520). There must be a showing of clear and intentional discrimination. (Gundling v. Chicago, 177 U. S. 183, 186; Snowden v. Hughes, 321 U. S. 1, 8; Hughes, v. Heinze, 268 F. 2d 864.)
In applying these principles of law to the facts adduced at the hearing, it was incumbent on this court to determine whether the evidence substantiated a purposeful discriminatory enforcement of a statute constitutional on its face.
The record discloses that Patrick J. Eeape, as president of Local 474, Amalgamated Meat Cutters Union, on the 2nd or 3rd day of February, 1965, accompanied by Paul H'ennig, his vice-president, met with the defendant and requested that he negotiate a union contract. The agreement was to contain a provision that any employee working on Sunday would receive time and a-half pay for such work. There was no provision in the proposed contract with respect to the items that could be sold, The question of the sale of uncooked meats on Sunday was never discussed, The defendant was told that the union was in opposition to his opening on Sunday and that to remain open “ would worsen the condition of the people in the area ”. The contract was never executed.
The union officials first observed that uncooked meat was being sold by the defendant on Sunday when they began picketing the store. The complainant and the supporting witness, both union officials, testified that, in order to protect the organization, something had to be done about bringing the violations to the attention of the county or law-enforcement authorities.
In order to obtain the necessary evidence, Mr. Eeape asked John J. O’Connor, another union officer, to enter the defendant’s store on the Sunday in question and make the punchase of uncooked meat- Mr. Eeape, in referring to his purpose behind the arrest, testified that: “ It was our intention that if the law enforcement agencies do not enforce the law, we do our best *911 to have the law enf orced ”. Continuing his testimony he stated, “ It is our intent to see that this particular section of the law be enforced. By enforcing the uncooked meat section, you could assert a certain amount of pressure to close down these independent markets. By bringing about enforcement of Section 2147-6, thereby bringing out a situation whereby you would have similar hours to big chain stores, so that the big chain stores would not have to compensate on Sunday and would not have to compete with independent markets ”,
The court is aware of the plight of the supermarkets. As parties to union contracts, they are prevented, by economic difficulties, from opening their establishments on Sundays and thus competing with the independent grocers.
It is also obvious to this court that this situation must cause a union official a justifiable concern, which he should be able to effectively express and, indeed, he can do so. If he feels in good faith that a policy of selling uncooked meats on Sunday in a given area is detrimental to organized labor, that it lowers standards in the trade, and casts undue economic disadvantages on others, he has the right and legal privilege to call the public’s attention to such improprieties by the various lawful means of notoriety, expression and persuasion at his disposal. Although a peaceful expression of grievance is imbedded in, and well recognized by our law, the use of threats, coercion and intimidation is not, and this is so no matter how noble may be the end of the agent or how tempting and mendaciously justifiable the means may appear.
To have threatened the arrest and to have actually caused the arrest of the defendant storekeeper, with full knowledge that others were violating the “ Sabbath Laws ”, leaves little doubt but that the motivation for complainant’s act was a desire to force the defendant to unionize his business, rather than a wish to enforce the law.
The evidence reveals that the union officials were aware oi the violation of the “ Sabbath Laws ” by ununionized independent grocers, yet no complaint was filed, no arrest made; no similar action was taken against any of them.
The testimony of one supporting witness for the complainant showed that the union, in fact, sought enforcement of the “ Sabbath Laws ’’ exclusively against independent meat markets which were not under union contracts, but it made no attempt to enforce the statute against unionized stores. In fact, the evidence forcefully indicated that the union contracts contain no provisions relating to the suspension of meat selling operations on Sundays. The typical union contract provides for the *912 employment of butchers on Sunday upon the condition that they receive the agreed salary differential.
The evidence, on behalf of the defendant, was further strengthened by the testimony of a witness who visited other meat markets in the City of Poughkeepsie on Sunday, May 23, 1965 between 10:00 a.m. and 12 o’clock noon and purchased uncooked meats, and by the records of the City Court of Poughkeepsie, which showed no arrests in at least the last 14 years for a violation of the “ Sabbath Laws ”.
;■ There appears to be, from every indication of the proof submitted, a designed discrimination against the defendant because of his failure to negotiate a union contract. The real and understandable impulse behind the actions of the complainant was an urgent desire to unionize the defendant’s business. Since- other, methods failed, in his zeal to accomplish a perfectly proper end, he singled out the defendant as a nonunion store for criminal prosecution, without, however, taking similar action against other violators. This means, unfortunately, constituted an “ irrational discrimination as between persons or groups of persons in the incidence of a law” (Goesaert v. Cleary, 335 U. S. 464, 466) and remained so in spite of complainant’s genuine ¡dedication to his laudable cause.
In the case of People v. Utica Paw’s (supra, p. 18) the court enunciated this principle of law: ” The wrong sought to be prevented is a wrong by the public authorities.” Thus arises the question: were not the acts of the complainant purely private and, therefore, inattributable to public authority?
The United States Supreme Court in Peterson v. City of Greenville (373 U. S. 244, 247) in dealing with this concept set down, a helpful guideline to the answer: “ It cannot be disputed that under our decisions ‘ private conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it.’ ”
In the case at bar the complainant, by swearing to an information seeking the defendant’s arrest, started the process of criminal prosecution, but it was carried on by the People. A detective of the City of Poughkeepsie Police Department made the arrest, and the prosecution of the case was in the hands of the Dutchess County District Attorney’s office. The People thus placed its power, properly and prestige behind the discriminatory enforcement of the statute in question. Indeed, the public authorities had no choice but to make the arrest and prosecute this action, yet, nevertheless, by such action, the State *913 was placed in a position of a joint participant in the challenged activity.
The court, therefore, finds that the conduct here involved was not so private as to fall outside the scope of the Fourteenth Amendment, but rather sufficiently public to make the equal protection clause available as a defense.
In the cases of People v. Pam (38 Misc 2d 296, affd. 43 Misc 2d 357) and People v. Paine Drug Co. (22 A D 2d 156, affd. 16 N Y 2d 503), the courts found that the defendant in each case failed to prove that the statute was discriminately enforced. These cases are, therefore, clearly distinguishable from the case at bar, where such discrimination is found.
In the Pam case (supra) there was no evidence of any grocery store or grocery business being open on Sunday; there was no testimony of any witness making purchases on Sunday, there was no evidence at all. proving discrimination in the enforcement of the statute. In the Paine Drug Co. ease (supra) there was an announced policy of the prosecutor that all specific complaints would be investigated and prosecuted.
In the present case, there was no lack of proof that other similar stores Avere open on Sunday; there was proof of purchases of uncooked meats at prohibited hours on Sunday, and there Avas evidence that no arrests were made except of this defendant. There Avas further no indication in the record of any nondiscriminatory announced policy of the prosecutor.
Accordingly, I find on the facts and on the law that the defendant has sustained the burden of proving that the statute in question has been discriminately enforced against him.
The application to dismiss or quash the proceedings is in all respects granted.