Charles R. Welch, J.
The defendant is charged with a violation of sections 3 and 9 of the New York General Business Law. It is alleged that the defendant sold a men’s necktie to a member of the Onondaga County Sheriff’s Department on Sunday, December 7, 1969 at the defendant’s store at 4111 *144 West Genesee Street in the Town of Camillus, New York. Following a preliminary hearing the defendant has moved for a dismissal of the charge on the ground that the statute under which the defendant is charged is unconstitutionally vague and further that the prosecution of the defendant in this case is unconstitutionally discriminatory.
The defendant’s first point is based upon the well-settled constitutional rule that a criminal statute violates a citizen’s right to due process of law as guaranteed by the Fourteenth Amendment of the Constitution where that statute is so vague, indefinite and uncertain that it fails to inform men of common intelligence what conduct on their part will render them liable to its penalties. Defendant points out that the sale of souvenirs is an exception which is permitted by the statute and that the necktie purchased from the defendant in this case may or may not have been a souvenir depending upon the state of mind of the purchaser. It is argued that it is quite impractical and unreasonable to expect the seller to ascertain or know the state of mind of the purchaser and to make a decision as to whether or not to consummate the sale following an investigation of the purchaser’s mind. We think it is unreasonable to expect a store employee to question the purchaser as to whether or not the tie which he is purchasing is intended as a Christmas gift which he further intends to be a souvenir or a remembrance of the affection between the donor and the recipient. Following such reasoning to its logical conclusion, one must find that practically any article capable of being offered for sale could be intended by the purchaser as a gift to some third party and further intended by the purchaser to be a souvenir or remembrance. All such purchases would be excepted from the Sunday sales prohibition and a determination of a defendant’s guilt or innocence would rest not upon a classification of the items sold but rather upon a classification of the intent of a stranger, a factor which is entirely beyond the control of a potential defendant.
It would seem to the court, however, the question of vagueness with respect to Sunday selling laws is far broader than is illustrated by analysis of a single word contained in the statute. Section 5 of the General Business Law provides that all labor on Sunday is prohibited except the works of necessity and charity. The phrase “ works of necessity ” is so broad as to provide exception to the prohibition for nearly every form of labor conceivable. Today’s world is far more complex and mechanized than the world known or even imagined by the Legislature which enacted these provisions. It goes without saying that selling of any kind is work, and in today’s world *145 selling becomes a work of necessity whenever the buyer has a practical need for the item purchased. Our daily lives are dominated by the hundreds of mechanical and electrical devices which are forever in need of minor repair, adjustments or replacement in order to keep our households running at some degree of efficiency and comfort. Viewed in such a light there is scarcely an item in creation which on any given day, be it Sunday o:r 'Otherwise, is not a necessity in some person’s life and making that item available for sale is certainly necessary work.
The lives of productive citizens are so complicated and so scheduled by the exigencies of modern life that it is necessary for citizens to be able to use what leisure time they have as freely and efficiently as possible. The working man should be able to use his free time in whatever way he finds necessary to the recreational and/or operational needs of himself or his household. If Sunday is the only day that his family can get together to go on a picnic, a Sunday selling law should not obstruct them from purchasing a barbeque grill. The person who sells such a family a grill on Sunday is providing them with a practical necessity. If Sunday is the only time available to a householder to effect minor repairs in his home, the vendor who supplies him with the necessary tools, equipment and materials to effect those repairs is providing the purchaser with items of practical necessity. Having determined that the seller in such situations is performing necessary work and finding further that every item offered for sale in today’s world can be a practical necessity at any given time, we are forced to conclusion that section 5 of the General Business Law provides an exception so broad and so vague as to render the prohibition meaningless. The statute in question contains additional language which is vague and strictly applied would provide a result far beyond the intention envisioned by the enacting legislatures. Section 9 prohibits the public selling or offering for sale of any property on Sunday. Strictly interpreted such a provision could be construed to prohibit advertising in the Sunday newspapers and advertising on the various broadcast medias on Sundays. While the prospect of having Sunday’s profootball game uninterrupted by commercial messages has a certain appeal, practical economics tells us that such a prospect can never become a reality. Similarly the great benefit which the community derives from a Sunday newspaper filled with news and information about every aspect of our daily lives would cease to be a reality without the financial support which advertising provides. A statute whose provi *146 sions are thus so vague so as to permit a construction resulting in prohibition far beyond the intention of the Legislature is so defective that it is unconstitutional.
In the past New York courts have adopted the position that although the so-called “ Sunday Laws ” may have a religious origin, it is also recognized that the first day of the week by general consent is to be set apart “ for rest” in accord with the general experience of mankind, and it is wise and necessary to set apart such a day at stated intervals for both physical and moral welfare of the members of the State or community. (People v. Friedman, 302 N. Y. 75.) While there certainly is a value in legislation setting aside one day for rest and limited commercial activity, it is obvious that the need for some commercial activity on every day of the week necessitates exceptions. The exceptions provided for in the present statute are in the opinion of this court too broad and vague to permit effective administration of the statute. The New York State Legislature has apparently recognized this problem to some extent and has attempted to revise the statute during the 1971 session. However, the proposed revision was vetoed by the Governor after having been passed by both houses of the State Legislature.
While the vagueness of the statute may be cured by amendment or complete re-enactment, it seems to the court that the Sunday selling laws face additional constitutional problems.
The Friedman decision by the New York Court of Appeals tends to define statutes which are violative of First Amendment rights as those statutes which in an active positive sense tend to set up a church or make religious worship compulsory or restrict religious belief or the exercise of religion or provide compulsory support for religious institutions or in any way enforce or prohibit religion. Since that time the United States Supreme Court has broadened the definition of statutes which are violative of First Amendment rights so as to include statutes which either give support to the concept of religion in general or place a burden upon or create a practical difficulty for the nonreligious citizen. The school prayer decisions (Engel v. Vitale, 370 U. S. 421; Abington School Dist. v. Schempp, 374 U. S. 203) make it clear that the nonreligious person or the atheist should not be burdened or subjected to practice that which is religiously orientated and not required by his own conscience or moral standards. In the school prayer cases, the Supreme Court admonished the State to observe strict neutrality with respect to religion in public schools, and the Supreme Court has consistently held that the establishment *147 clause in the First Amendment withdraws all legislative power respecting religious belief or the expression thereof, and the court has said that the test laid down in the Schempp case was that to withstand the strictures of the establishment clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion. It is clear that the Sunday selling laws do not meet this test. To the extent that the nonreligious person is prevented from engaging in an activity which is otherwise permissible by any legal, moral or ethical standard simply because he desires to engage in that activity on a day which has religious significance to others, forces that person to give a recognition to religious observance which he would not otherwise give, and as such, the statute has the effect of an advancement of religion. Section 2 of the General Business Law specifically provides “ The first day of the week being by general consent set apart for rest and religious uses, the law prohibits the doing on that day of certain acts hereinafter specified which are serious interruptions of the repose and religious liberty of the community.” While this court agrees that it is undoubtedly in the best interest of society as a whole that there be a day of general rest each week, we are compelled to follow the interpretation of the First Amendment of the United States Constitution as laid down by the United States Supreme Court. Accordingly we must, therefore, conclude that this law is contrary to the First Amendment of the United States Constitution and, therefore, unenforceable.
Finally we have the defendant’s contention that the prosecution of this case represents discriminatory enforcement of the statute. The uncontroverted testimony before the court with respect to the wide-spread violation of this statute with the knowledge and acquiescence of the enforcement agencies coupled with the testimony of the Sheriff with respect to the activities of the Syracuse Chamber of Commerce which resulted in the prosecution of this particular defendant for this particular violation indicates the clearest possible case of discriminatory enforcement.
The procedure for testing a defendant’s claim of discriminatory enforcement is set out in some detail in People v. Utica Daw’s Drug Co. (16 A D 2d 12). The court in that case said that a heavy burden rests on the defendant to establish the conscious, intentional discrimination; but if it succeeds in sustaining that defense, the defendant will be entitled to a dismissal of the prosecution as a matter of law. The defendant has met that burden in this case. From the testimony of the Sheriff, it appears that the only motivation for this prosecution *148 was the effort of the Syracuse -Chamber of Commerce to lessen the defendant’s competitive advantage in the business community derived from its suburban location. Following the complaint of the Syracuse Chamber -of Commerce, this prosecution was commenced by the Sheriff’s department and carried forward by the Onondaga County District Attorney’s -office. Just as in People v. Tornatore (46 Misc 2d 908) the People thus placed its power, property, and prestige behind the discriminatory enforcement of the statute in question. In such a situation the prosecution under this statute becomes a weapon in the hands -of a segment of the business community to be used against another segment of the business community to pursue private goals rather than a public benefit.
Accordingly, I find that the statute under which the defendant is charged is unconstitutional, being violative of the First and Fourteenth Amendments to the Federal Constitution, and I further find upon the law and the facts that the defendant has sustained the burden of proving that the -statute in question has been discriminately enforced against it.
The defendant’s motion for dismissal of the proceedings is granted. Case dismissed.