## GOESAERT ET AL. *v.* CLEARY ET AL., MEMBERS OF THE LIQUOR CONTROL COMMISSION OF MICHIGAN.

No. 49.   Argued November 19, 1948.—Decided December 20, 1948.

*Anne R. Davidow* argued the cause and filed a brief for appellants.   *Larry S. Davidow* was also of counsel.

*Edmund E. Shepherd,* Solicitor General of Michigan, argued the cause for appellees.   With him on the brief were *Eugene F. Black,* Attorney General, *Daniel J. O'Hara* and *Charles M. A. Martin,* Assistant Attorneys General.

Mr. Justice Frankfurter delivered the opinion of the Court.

As part of the Michigan system for controlling the sale of liquor, bartenders are required to be licensed in all cities having a population of 50,000 or more, but no female may be so licensed unless she be "the wife or daughter of the male owner" of a licensed liquor establishment. Section 19a of Act 133 of the Public Acts of Michigan, 1945, Mich. Stat. Ann. § 18.990 (1) (Cum. Supp. 1947). The case is here on direct appeal from an order of the District Court of three judges, convened under § 266 of the old Judicial Code, now 28 U. S. C. § 2284, denying an injunction to restrain the enforcement of the Michigan law. The claim, denied below, one judge dissenting, 74 F. Supp. 735, and renewed here, is that Michigan cannot forbid females generally from being barmaids and at the same time make an exception in favor of the wives and daughters of the owners of liquor establishments. Beguiling as the subject is, it need not detain us long. To ask whether or not the Equal Protection of the Laws Clause of the Fourteenth Amendment barred Michigan from making the classification the State has made between wives and daughters of owners of liquor places and wives and daughters of non-owners, is one of those rare instances where to state the question is in effect to answer it.

We are, to be sure, dealing with a historic calling. We meet the alewife, sprightly and ribald, in Shakespeare, but centuries before him she played a role in the social life of England. See, e. g., Jusserand, English Wayfaring Life in the Middle Ages, 133, 134, 136–37 (1889). The Fourteenth Amendment did not tear history up by the roots, and the regulation of the liquor traffic is one of the oldest and most untrammeled of legislative powers. Michigan could, beyond question, forbid all women from working behind a bar. This is so despite the vast changes

in the social and legal position of women. The fact that women may now have achieved the virtues that men have long claimed as their prerogatives and, now indulge in vices that men have long practiced, does not preclude the States from drawing a sharp line between the sexes, certainly in such matters as the regulation of the liquor traffic. See the Twenty-First Amendment and *Carter* v. *Virginia,* 321 U. S. 131. The Constitution does not require legislatures to reflect sociological insight, or shifting social standards, any more than it requires them to keep abreast of the latest scientific standards.

While Michigan may deny to all women opportunities for bartending, Michigan cannot play favorites among women without rhyme or reason. The Constitution in enjoining the equal protection of the laws upon States precludes irrational discrimination as between persons or groups of persons in the incidence of a law. But the Constitution does not require situations "which are different in fact or opinion to be treated in law as though they were the same." *Tigner* v. *Texas,* 310 U. S. 141, 147. Since bartending by women may, in the allowable legislative judgment, give rise to moral and social problems against which it may devise preventive measures, the legislature need not go to the full length of prohibition if it believes that as to a defined group of females other factors are operating which either eliminate or reduce the moral and social problems otherwise calling for prohibition. Michigan evidently believes that the oversight assured through ownership of a bar by a barmaid's husband or father minimizes hazards that may confront a barmaid without such protecting oversight. This Court is certainly not in a position to gainsay such belief by the Michigan legislature. If it is entertainable, as we think it is, Michigan has not violated its duty to afford equal protection of its laws. We cannot cross-examine either actually or argumentatively the mind of Michigan legis-

lators nor question their motives. Since the line they have drawn is not without a basis in reason, we cannot give ear to the suggestion that the real impulse behind this legislation was an unchivalrous desire of male bartenders to try to monopolize the calling.

It would be an idle parade of familiar learning to review the multitudinous cases in which the constitutional assurance of the equal protection of the laws has been applied. The generalities on this subject are not in dispute; their application turns peculiarly on the particular circumstances of a case. Thus, it would be a sterile inquiry to consider whether this case is nearer to the nepotic pilotage law of Louisiana, sustained in *Kotch* v. *Pilot Commissioners,* 330 U. S. 552, than it is to the Oklahoma sterilization law, which fell in *Skinner* v. *Oklahoma,* 316 U. S. 535. Suffice it to say that "A statute is not invalid under the Constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result that it tends to produce." *Roschen* v. *Ward,* 279 U. S. 337, 339.

Nor is it unconstitutional for Michigan to withdraw from women the occupation of bartending because it allows women to serve as waitresses where liquor is dispensed. The District Court has sufficiently indicated the reasons that may have influenced the legislature in allowing women to be waitresses in a liquor establishment over which a man's ownership provides control. Nothing need be added to what was said below as to the other grounds on which the Michigan law was assailed.

*Judgment affirmed.*

MR. JUSTICE RUTLEDGE, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY join, dissenting.

While the equal protection clause does not require a legislature to achieve "abstract symmetry"[1] or to classify

---

[1] *Patsone* v. *Pennsylvania,* 232 U. S. 138, 144.

with "mathematical nicety," [2] that clause does require lawmakers to refrain from invidious distinctions of the sort drawn by the statute challenged in this case. [3]

The statute arbitrarily discriminates between male and female owners of liquor establishments. A male owner, although he himself is always absent from his bar, may employ his wife and daughter as barmaids. A female owner may neither work as a barmaid herself nor employ her daughter in that position, even if a man is always present in the establishment to keep order. This inevitable result of the classification belies the assumption that the statute was motivated by a legislative solicitude for the moral and physical well-being of women who, but for the law, would be employed as barmaids. Since there could be no other conceivable justification for such discrimination against women owners of liquor establishments, the statute should be held invalid as a denial of equal protection.

---

[2] *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78–82; see also *Tigner* v. *Texas*, 310 U. S. 141, 147; *Bain Peanut Co.* v. *Pinson*, 282 U. S. 499, 501; *Bryant* v. *Zimmerman*, 278 U. S. 63, 73–77; *Miller* v. *Wilson*, 236 U. S. 373, 384.

[3] Cf. *Skinner* v. *Oklahoma*, 316 U. S. 535; *Missouri ex rel. Gaines* v. *Canada*, 305 U. S. 337; *McCabe* v. *Atchison, T. & S. F. R. Co.*, 235 U. S. 151; *Yick Wo* v. *Hopkins*, 118 U. S. 356. And see *Kotch* v. *Pilot Commissioners*, 330 U. S. 552, dissenting opinion 564.