Faith A. SEIDENBERG and Karen DeCrow, Plaintiffs,

v.

McSORLEYS' OLD ALE HOUSE, INC., Defendant.

No. 69 Civ. 2728.

United States District Court
S. D. New York.

Nov. 12, 1969.

Supplemental Memorandum
Dec. 9, 1969.

Faith A. Seidenberg, Rosemary Pooler, Syracuse, N. Y., Bruce J. Ennis, New York City, for plaintiffs.

William F. Larkin, New York City, for defendant.

TENNEY, District Judge.

Defendant moves pursuant to Fed.R. Civ.P. 12(b) (1) and (6) for an order dismissing plaintiffs' complaint on the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Plaintiffs, citizens of the United States and board members of the National Organization for Women, seek a declaratory judgment pursuant to 28 U.S.C. § 2201 enjoining the continuance of defendant's one hundred and fourteen year practice of catering only to men.

The material allegations of the complaint, which must be accepted as admitted for the purposes of a Rule 12(b) (6) motion, reveal that on January 8, 1969 plaintiffs entered McSorleys' Old Ale House, a bar primarily engaged in serving alcoholic and non-alcoholic beverages. Upon requesting service, they were told by the bartender that defendant does not serve women and, moreover, has consistently adhered to this practice throughout its existence. Although plaintiffs were sitting quietly and in no way disturbing defendant's patrons, except possibly by the mere fact of their presence itself, they were repeatedly refused service solely on the basis of their sex. Plaintiffs allege that these facts present an actionable claim under the Civil Rights Act, 42 U.S.C. § 1983, within the jurisdiction of this court as prescribed in 28 U.S.C. § 1343(3) (4).

Title 42, United States Code, Section 1983, provides, in part, that any person who, under color of any state statute or regulation, subjects any citizen of the United States to the deprivation of rights secured by the Constitution and laws shall be liable to the party injured. Title 28, United States Code, Section 1343(3) (4), establishes original jurisdiction in the district courts to entertain civil actions to redress such deprivations against the equal rights of citizens secured either by the Constitution or by any Act of Congress.

██ Additionally, Section 201(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a), guarantees to all persons the full and equal enjoyment of public accommodations without discrimination on account of race, color, religion, or national origin. Section 201(a), however, is of no benefit to plaintiffs since, unlike Section 704(b), 42 U.S.C. § 2000e–3(b), which deals solely with unlawful employment practices, there exists no proscription against discrimination on the basis of sex in public accommodations. Since

Congress has not seen fit to include sex as an impermissible basis of discrimination in public accommodations, while expressly including sex as a generally impermissible basis of discrimination in employment practices, this Court "should not gratuitously do what Congress has not seen fit to do" by superimposing such condition on the public accommodations law. DeCrow v. Hotel Syracuse Corp., 288 F.Supp. 530, 532 (N.D.N.Y. 1968); see DeCrow v. Hotel Syracuse Corp., 59 Misc.2d 383, 298 N.Y.S.2d 859 (Sup.Ct.1969). Moreover, recent decisions have found Section 201 of the Civil Rights Act of 1964 inapplicable to bars and taverns whose principal business is the sale of alcoholic beverages. Tyson v. Cazes, 363 F.2d 742, 743 (5th Cir. 1966); Cuevas v. Sdrales, 344 F.2d 1019, 1022–1023 (10th Cir. 1965), cert. denied, 382 U.S. 1014, 86 S.Ct. 625, 15 L.Ed.2d 528 (1966). However, a business which describes itself as a bar would nevertheless be covered by the Act if it is principally engaged in selling food for consumption on the premises. Cuevas v. Sdrales, supra at 1022 n. 3; see Fazzio Real Estate Co. v. Adams, 396 F.2d 146, 149–150 (5th Cir. 1968). Plaintiffs assert that McSorleys "is primarily a bar which serves alcoholic and non-alcoholic beverages". But even if this Court were to assume that the sale of foodstuffs is a substantial concomitant of defendant's business, thus qualifying it as an enumerated public accommodation under Section 201, I would still be bound to find such Section inapplicable herein for those reasons previously noted.

Our inquiry must thus return to a determination of whether defendant may be found under any state of facts which could be proved to be acting under color of state law in its continued practice of refusing service to women, and whether such practice has denied plaintiffs the equal protection of the laws as prescribed in the Fourteenth Amendment to the Constitution.

■ Plaintiffs' inexpertly drafted pleadings appear vulnerable, at first blush, to defendant's motion to dismiss for failure to allege sufficient facts to state a valid claim under Section 1983. Padilla v. Lynch, 398 F.2d 481, 482 (9th Cir. 1968); Clawson v. Garland, 37 F.R.D. 324 (E.D.S.C.1965); Sigue v. Texas Gas Transmission Corp., 235 F. Supp. 155, 156 (W.D.La.1964), aff'd, 354 F.2d 40 (5th Cir. 1965). But it is well settled that pleadings are to be liberally construed so that a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiffs are entitled to no relief under any state of facts which *could* be proved in support of their claim. Williams v. Wheeling Steel Corp., 266 F.Supp. 651, 654 (N.D.W.Va. 1967); Black v. Board of Educ., 31 F.R.D. 44, 46 (E.D.N.Y.1962); 2A J. Moore, Federal Practice ¶ 12.08 at 2266 (2d ed. 1968). After a thorough examination of applicable law, I, with due deference to my brother Port in DeCrow v. Hotel Syracuse Corp., *supra,* am not convinced beyond a reasonable doubt that plaintiffs' claim is without any merit and wholly frivolous or that plaintiffs would be unable to prove a right to relief. Accordingly, I find that plaintiffs have met their relatively slight burden in resisting defendant's motion to dismiss. Williams v. Wheeling Steel Corp., *supra.*

■ The principle has become firmly embedded in American constitutional law that only such action as may fairly be said to be that of the States is inhibited by the Equal Protection Clause of the Fourteenth Amendment. So-called private discrimination, however distasteful or invidious, does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has become involved in it. Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). No infallible test has been formulated for determining whether the State in any of its manifestations or by any arrangement, management, sharing or granting of funds or property has become significantly involved in private discrimination. Burton v. Wilmington

Parking Authority, *supra;* Cooper v. Aaron, 358 U.S. 1, 4, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). Only by sifting facts and weighing circumstances on a case-by-case basis can nonobvious involvement of the State be attributed its true significance. Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). This is especially true since the State involvement necessary to invoke the provisions of the Equal Protection Clause need not be exclusive or direct, United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), and may be brought about through the State's administrative and regulatory agencies as well as through its legislature. Robinson v. Florida, 378 U.S. 153, 156, 84 S.Ct. 1693, 12 L.Ed.2d 771 (1964).

 The power to grant a license for the sale of alcoholic beverages and to prescribe the limits and conditions of its exercise, in a field where absolute as well as conditional prohibition is permissible, is an attribute of sovereignty which is almost universally considered a part of a State's administrative process. There exists no vested right in the initial granting of such license, or in its continuance. The discretion exercised in granting or revoking a liquor license is an exercise of ultimate sovereignty commonly referred to as the State's police power. Bordenelli v. United States, 233 F.2d 120, 125, 16 Alaska 185. (9th Cir. 1956).

It is the declared policy of the State of New York, as expressed in Section 2 of the Alcoholic Beverage Control Law, McKinney's Consol.Laws, c. 3–B (hereinafter referred to as the "Law") that:

[I]t is necessary to regulate and control the * * * sale * * * of alcoholic beverages for the purpose of fostering and promoting temperance

* * * and respect for and obedience to law. * * * [S]uch policy will best be carried out by empowering the liquor authority of the state to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages, the increase or decrease in the number thereof and the location of premises licensed thereby. * * * The restrictions, regulations and provisions contained in this chapter are enacted by the Legislature for the protection, health, welfare and safety of the people of the state.

Section 17(7) of the Law permits the State Liquor Authority "[t]o inspect or provide for the inspection of any premises where alcoholic beverages are * * * sold," while Sections 102 and 106 extensively prescribe prohibitions, conditions and provisions governing licensees who sell alcoholic beverages at retail for consumption on the premises of the licensee. Of course, by Section 65 of the Law, the State Legislature has prohibited licensees from selling or giving alcoholic beverages to anyone under the age of eighteen years, under the influence of liquor or known to be an habitual drunkard.[1]

The question presented, then, is whether by virtue of this pervasive regulatory scheme the licensee may properly be considered an instrumentality of the State whose acts may, for the purposes of the Fourteenth Amendment, be considered the acts of the State itself.[2]

Mr. Justice Harlan, in his dissent to the Civil Rights Cases, 109 U.S. 3, 58–59, 3 S.Ct. 18, 27 L.Ed. 835 (1883), first expressed the view that:

"In every material sense applicable to the practical enforcement of the

---

1. Pg. 9. "Federal courts, without pleading or proof, will judicially notice the laws of every state and territory of the United States * * * whether consisting of the Constitution, public statutes or judicial decisions. * * *" 2B W. Barron & A. Holtzoff, Federal Practice

and Procedure § 963, at 225 (C. Wright ed. 1961).

2. Pg. 9. Of course, this is not to say that further facts could not subsequently be established which would show that the State has become significantly involved in other respects in defendant's policy.

Fourteenth Amendment, railroad corporations, keepers of inns, and managers of places of public amusement are agents or instrumentalities of the State, because they are charged with duties to the public, and are amenable, in respect of their duties and functions, to governmental regulation. It seems to me that, * * * a denial, by these instrumentalities of the State, to the citizen, because of his race, of that equality of civil rights secured to him by law, is a denial by the State, within the meaning of the Fourteenth Amendment. If it be not, then that race is left, in respect of the civil rights in question, practically at the mercy of corporations and individuals wielding power under the States."

■ Justice Harlan's dissent found some support in Marsh v. Alabama, 326 U.S. 501, 506, 66 S.Ct. 276, 278, 90 L.Ed. 265 (1946) where, in holding that a State could not, consistently with the First and Fourteenth Amendments, impose criminal punishment on a person for distributing religious literature on the sidewalk of a company-owned town contrary to regulations of that town's management, the Court noted:

"Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it. Thus, the owners of privately held bridges, ferries, turnpikes and railroads may not operate them as freely as a farmer does his farm. Since these facilities are built and operated primarily to benefit the public and since their operation is essentially a public function, it is subject to state regulation. (Citations omitted.)

While considerable question exists as to whether defendant's activities herein may properly be deemed governmental in nature, when a significantly restricted and regulated license is granted by the State to exercise a privilege of serving the public where that privilege would be impermissible without such license, there may well exist sufficient State involvement to make the acts of the licensee those of the State itself. This thesis has found support in the concurring opinions of Mr. Justice Douglas in Garner v. Louisiana, 368 U.S. 157, 182–185, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961), and Lombard v. Louisiana, 373 U.S. 267, 280–283, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963). In *Garner,* Justice Douglas commented that:

"Those who run a retail establishment under permit from a municipality operate, in my view, a public facility in which there can be no more discrimination based on race than is constitutionally permissible in the more customary types of public facility. * * * I do not see how a State can constitutionally exercise its licensing power over business either in terms or in effect to segregate the races in the licensed premises. The authority to license a business for public use is derived from the public. * * * A license to establish a restaurant is a license to establish a public facility and necessarily imports, in law, equality of use for all members of the public. * * *.

One can close the doors of his home to anyone he desires. But one who operates an enterprise under a license from the government enjoys a privilege that derives from the people. * * * [T]he necessity of a license shows that the public has rights in respect to those premises."

Again, concurring in *Lombard,* Justice Douglas reiterated this view.

"When the doors of a business are open to the public, they must be open to all regardless of race if *apartheid* is not to become engrained in our public places. * * *

* * * * * *

State licensing and surveillance of a business serving the public also brings its services into the public domain. This restaurant needs a permit

from Louisiana to operate; and during the existence of the license the State has broad powers of visitation and control. This restaurant is thus an instrumentality of the State since the State charges it with duties to the public and supervises its performance."

Bars or taverns, though a species of private property, are clearly in the public domain, "affected with a public interest" and subject to more extensive State supervision and control than the lunch counters in *Garner* and *Lombard*.[3]

While the concept of a business "affected with a public interest" normally is used as a measure of a State's police power over it, I am not proposing, as has been suggested,[4] that the boundaries of the Fourteenth Amendment and the State's regulatory power, for the purposes of due process requirements, be made coterminous. Nor am I unmindful of the fact that the influence and beneficial activities of the State permeate virtually every area of human endeavor. Pennsylvania v. Brown, 270 F.Supp. 782 (E.D.Pa.1967), aff'd, 392 F.2d 10, 25 A.L.R.3d 724 (3d Cir.), cert. denied, Brown v. Pennsylvania, 391 U.S. 921, 88 S.Ct. 1811, 20 L.Ed.2d 657 (1968). But in assessing the impact of official State action in determining whether the State has thereby significantly involved itself in actions alleged to amount to invidious discrimination, our review must, as previously noted, be made on a case-by-case basis. Here, I find a great deal more than a scintilla of State action, but such action which may be considered ubiquitous and pervasive.

It must be noted that this concept of State involvement in the acts of its licensee has been rejected by the Fourth Circuit with respect to restaurants, Williams v. Howard Johnson's Restaurant, 268 F.2d 845, 847–848 (4th Cir. 1959); Slack v. Atlantic White Tower System, Inc., 181 F.Supp. 124 ·(D.Md.), aff'd, 284 F.2d 746 (4th Cir. 1960), and by the New York State Court of Appeals with respect to race courses, Madden v. Queen's County Jockey Club, Inc., 296 N.Y. 249, 72 N.E.2d 697, cert. denied, 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 346 (1947). However, with due deference to these courts, I can not, as previously noted, accept the argument posed by the New York Court of Appeals in *Madden* that were the court to adopt this thesis, "it would be equally valid to argue that every licensee, theatre manager, cab driver, barber, liquor dealer, dog owner —to mention a few—must be regarded as 'an administrative agency of the state' in the conduct of his every day business simply because he pays a tax or fee for his license." Considering the nature of the State's involvement herein and the nature of the institution we are concerned with, these cases may well be distinguishable on their facts.

Once we assume, for the purposes of defendant's motion, that its policy of excluding women may properly be considered the acts of the State, the Court must then determine whether such discrimination is founded in reason and thus a permissible classification within the meaning of the Fourteenth Amendment.

The Court of Appeals for the Second Circuit has recently held in Gruenwald v. Gardner, 390 F.2d 591, 592 (2d Cir.), cert. denied, Gruenwald v. Cohen, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968), that special recog-

---

3. Pg. 12. At common law, as noted by Judge Waterman in his dissenting opinion in Adickes v. S. H. Kress & Co., 409 F.2d 121, 131–133 (2d Cir.), cert. granted, 394 U.S. 1011, 89 S.Ct. 1635, 23 L.Ed.2d 38 (1969), a "victualling house", defined as a place where people are provided with food and liquors, but not with lodgings, was required to serve all persons unless "good reason" could be shown for such refusal—"good reason" having been interpreted to mean that a proprietor may refuse service to a person who is unclean, untidy, intoxicated or affected by disease.

4. Pg. 12. K. L. Karst & W. W. Van Alstyne, Comment: Sit-Ins and State Action—Mr. Justice Douglas, Concurring, 14 Stan.L.Rev. 762 (1962).

nition and favored treatment can constitutionally be afforded women, and that it is only "invidious discrimination" or a classification which is "patently arbitrary [and] utterly lacking in rational justification" which is barred by either the "due process" or "equal protection" clauses. However, oft-quoted principles that "sex is a valid basis for classification" or that the State may draw "a sharp line between the sexes" should not be applied mechanically without regard to the reasonableness of the relationship between the purposes of the discrimination and the sex-based classification. L. Kanowitz, Constitutional Aspects of Sex-Based Discrimination in American Law, 48 Neb.L.Rev. 131 (1968). Nor should it be overlooked that the Supreme Court has been particularly sensitive to the basic civil rights of man, not hesitating to strike down an invidious classification which, as in the instant suit, had both history and tradition on its side. Levy v. Louisiana, 391 U.S. 68, 71, 88 S.Ct. 1509, 20 L.Ed.2d 436, rehearing denied, 393 U.S. 898, 89 S.Ct. 65, 21 L.Ed. 2d 185 (1968); Karczewski v. Baltimore & O. R. R., 274 F.Supp. 169, 177 (N.D. Ill.1967).

█ The issue here is whether such exclusion or classification rests on a difference which is real as distinguished from one which is seeming, specious, or fanciful. Men and women, if actually situated similarly for the purposes in question, that is, as potential patrons of defendant, must be treated alike. Only that action which an informed, intelligent, just-minded, civilized man or woman would rationally favor may be considered reasonable. Quaker City Cab Co. v. Pennsylvania, 277 U.S. 389, 406, 48 S.Ct. 553, 72 L.Ed. 927 (1928) (Brandeis, J., dissenting).

In Koesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948), the Court, by a 6–3 majority, upheld a State statute which prohibited females from working as bartenders unless they were the wife or daughter of the male owner of a licensed liquor establishment, finding that bartending by women may, in the allowable legislative judgment, give rise to moral and social problems. But this suit presents a totally distinguishable situation. Clearly the vast majority of bars or taverns cater to both men and women without occasioning such suggested moral or social problems.

Recent decisions have supported women's rights by striking down State statutes which denied them the right to serve as jurors, White v. Crook, 251 F. Supp. 401, 408–409 (M.D.Ala.1966), and permitted husbands but not wives to sue for loss of consortium. Karczewski v. Baltimore & O. R. R., *supra*. But see Miskunas v. Union Carbide Corp., 399 F.2d 847 (7th Cir. 1968), cert. denied, 393 U.S. 1066, 89 S.Ct. 718, 21 L.Ed.2d 709 (1969).

█ Although it would be premature at this time to determine the validity of defendant's policy, it is wise to note that the Constitution of the United States must be read as embodying general principles meant to govern society and the institutions of government as they evolve through time.[5] It is therefore a court's function to apply the Constitution as a living document to the justiciable controversies of contemporary society. To adhere to practices supported by ancient chivalristic concepts, when there may no longer exist a need or basis therefor, may only serve to isolate women from the realities of everyday life, and to perpetuate, as a matter of law, economic and sexual exploitation. While members of each sex may at times relish the opportunity to withdraw to the exclusive company of their own gender, if it be ultimately found that the State has become significantly involved in a policy which

5. Pg. 16. However, Mr. Justice Frankfurter noted in Goesaert v. Cleary, 335 U.S. 464, 466, 69 S.Ct. 198, 199, 93 L.Ed. 163 (1948), that "[t]he Constitution does not require legislatures to reflect sociological insight, or shifting social standards, any more than it requires them to keep abreast of the latest scientific standards."

mandates such seclusion, then considerable question is presented as to whether, for the purposes of the Fourteenth Amendment, this discrimination is founded upon a basis in reason.

Accordingly, and for the foregoing reasons, defendant's motion is in all respects denied.

So ordered.

## SUPPLEMENTAL MEMORANDUM

TENNEY, District Judge.

Defendant has moved for an order amending the prior decision of this Court, dated November 12, 1969, to include therein, pursuant to 28 U.S.C. § 1292(b), the statement that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Additionally, defendant seeks a stay of proceedings in this court with respect to plaintiffs' action pending the determination on appeal of the amended order of this Court. Plaintiff Faith A. Seidenberg, by letter dated November 28, 1969, has communicated her intention not to oppose defendant's application.

 Despite plaintiff's lack of opposition to this application, after careful consideration of the statute in question I am of the opinion that an immediate appeal of my prior order in this action was not the type of interlocutory appeal contemplated by the Framers of the Act. As was noted by the Court of Appeals for the Second Circuit in Gottesman v. General Motors Corp., 268 F.2d 194, 196 (2d Cir. 1959), Section 1292(b) applies only to the limited and exceptional type of case, and the indiscriminate use of the authority conferred thereby is condemned. An intermediate appeal from an interlocutory order may be taken pursuant to Section 1292(b) only where such an appeal may avoid protracted and costly litigation. This construction is supported by Milbert v. Bison Laboratories, Inc., 260 F.2d 431, 433–435 (3rd Cir. 1958), wherein the Court of Appeals for the Third Circuit quotes extensively from the report of the Committee on the Judiciary of the House of Representatives on this statute.

 The instant suit, unlike certain receivership actions, admiralty decrees, patent, anti-trust and conspiracy cases, to name a few, may prove amenable to a motion for summary judgment under Rule 56 of the Fed.R.Civ.P. Clearly, even if material issues of fact are found, it does not appear likely that a long trial will be necessary to resolve any factual disputes. Accordingly, I can not say that the grant of defendant's application would *materially* advance the ultimate termination of the litigation.

Although the Court is not unmindful of the fact that the District Court in Bell v. Georgia Dental Ass'n, 231 F. Supp. 299, 301 (N.D.Ga.1964), a case not altogether dissimilar from the instant suit, provided the relief sought herein in its interlocutory order, I am compelled by applicable legislative history to a contrary finding.

Accordingly, and for the foregoing reasons, defendant's application is in all respects denied. Additionally, defendant's motion for reargument from the opinion of this Court, dated November 12, 1969, is granted and, upon reargument, the prior opinion of this Court is adhered to.

So ordered.