PATERSON TAVERN & GRILL OWNERS ASS'N, INC., A NON-PROFIT CORPORATION OF NEW JERSEY *ET AL.*, PLAINTIFFS-APPELLANTS, v. THE BOROUGH OF HAW-THORNE, A MUNICIPAL CORPORATION *ET AL.*, DE-FENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 22, 1969—Decided February 6, 1970.

434

Before Judges KILKENNY, LABRECQUE and LEONARD.

*Mr. William J. Rosenbery* argued the cause for appellants (*Mr. George L. Harrison* and *Mr. Harold Goldman* on the brief).

*Mr. Douglas C. Borchard, Jr.*, argued the cause for respondents (*Messrs. Evans, Hand, Allabough & Amoresano*, attorneys).

The opinion of the court was delivered by

KILKENNY, P. J. A. D. Plaintiff appeals from the "whole" of the final judgment entered in the Law Division on June 24, 1969, whereby it was adjudged that ordinance No. 1137 of the Borough of Hawthorne is valid, with the exception of the word "improper" in section 1 thereof, which word was held to be vague and invalid.

But for that single-word exception, plaintiff's motion for summary judgment was denied and defendants' cross-motion for summary judgment was granted. There is no cross-appeal by defendants.

Ordinance No. 1137 was adopted on November 6, 1968. It is entitled: "An ordinance concerning employment of females on alcoholic beverage licensed premises, and further concerning indecent performances on such premises." It contains ten sections, but our concern is with only the first six which proscribe specified activities and conduct in or on licensed premises. Section 7 fixes the penalty for each day's violation at not more than $200. Section 8 provides for severability so that a declaration of invalidity of any provision shall not affect the remaining separable provisions. Section 9 repeals inconsistent provisions in other ordinances to the extent of their inconsistency. Section 10 provides that the ordinance shall take effect immediately upon final passage and publication according to law.

The legal standing of Paterson Tavern & Grill Owners' Association, a nonprofit corporation of New Jersey, to

challenge the validity of this Hawthorne ordinance has not been raised on this appeal by defendants. We refrain from raising that issue, *sua sponte,* because coplaintiff Harry Shortway, trading as Shortway's Barn, is a licensed tavern owner conducting his place of business in Hawthorne. He therefore is affected by its provisions and has standing.

I

■ Section 1 of the ordinance prohibits the employment of any person "to perform dancing or other entertainment in or upon the licensed premises * * * in a lewd, licentious, lascivious or improper manner." With the vague word "improper" correctly stricken therefrom by the trial court, we agree that the remainder of the prohibition is valid.

Plaintiffs argue that the words "lewd, licentious, lascivious" are too vague and "catch-all," thus failing to comport with due process because they do not sufficiently establish adequate guidelines for one to follow in determining what he may or may not do.

■ Our Supreme Court found no infirmity in the use of the word "lewd," without any further definition of the term in *N. J. S. A.* 2A:115-1; nor with "lascivious" in *N. J. S. A.* 2A:115-4. See *Adams Newark Theatre Co. v. City of Newark,* 22 *N. J.* 472 (1956). That case is dispositive of plaintiffs' contention as to this aspect, so far as this subordinate appellate tribunal is concerned. As to the word "licentious," the rule of *sui generis* controls its meaning, appearing as it does between "lewd" and "lascivious" in the phraseology employed.

II

■ Section 2 prohibits a licensee from allowing any person to appear upon the licensed premises "in any act, scene, sketch, or other form of entertainment including

dancing for the benefit of patrons with either or both breasts or the lower part of the torso uncovered or so thinly covered or draped so as to appear uncovered."

Here again, plaintiffs make the argument of "vagueness." The use of the disjunctive "either or both breasts * * * uncovered" has reference undoubtedly to the female breast. That portion of the female anatomy needs no further description. It is recognizable by infants, and tavern owners are presumably well aware of the legislative intent. The ordinance seeks to ban from Hawthorne's taverns and other licensed premises the "topless" and "bottomless" entertainer or dances. The community has a right to protect itself against this kind of an immoral atmosphere which exists elsewhere in the United States. Such so-called "entertainment" is nothing more or less than an appeal to the prurient interest. It is bait to bring customers to the bar and hold them there, for the obvious purpose of increasing the sale of alcoholic beverages. It may be validly curbed, as Hawthorne provides in its ordinance.

Nor do we find sufficient vagueness in the ban of the specified part of the human body "so thinly covered or draped so as to appear uncovered." The use of thin, transparent coverings can be practically as much of an exposure as when one is totally exposed. The evil is the same. Any tavern owner can readily avoid risk of violating this portion of the section by requiring entertainers to cover the specified parts with sufficient material of fully opaque quality. It is so accomplished in T.V. performances. The giving of an "illusion of nudeness" was deemed sufficiently precise and clear in *Adams Newark Theatre Co., supra,* 22 *N. J.,* at 479.

The reference to the need of adequately covering "the lower part of the torso" is sufficient without a more elaborate definition of the portion of human anatomy comprehended. Courts have taken judicial notice of the extent of the human "torso," and even of its average and maximum length. See *Hunter v. N. Y. Ont. and Western R. R. Co.,*

116 *N. Y.* 615, 621, 23 *N. E.* 9, 6 *L. R. A.* 246 (Ct. App. 1884). The torso is the trunk of the human body, usually measured from the end of the spine without relation to the extremities. While more blunt descriptive language might have been used, there is no mistaking the legislative intent, especially in the light of the title of this ordinance, concerned as it is with "indecent performances" on licensed premises.

### III

■ Section 3 bans waitresses and other employees who come in contact with patrons "to appear in the presence of such patrons with either or both breasts or the lower part of the torso uncovered or so thinly covered or draped so as to appear uncovered." In brief, the "topless" or "bottomless" waitress or employee is restricted in the same manner and to the same degree as is the tavern entertainer. We find this section valid for the same reasons expressed above in our discussion of Section 2. "They were promulgated to prevent moral contamination which the municipality feared was imminent. In substance, they contribute to the general moral welfare of its citizens and should not be declared invalid." That statement from *Adams Newark Theatre Co.*, *supra*, 22 *N. J.*, at 480, is equally applicable herein.

### IV

■ Section 4 provides: "No licensee shall engage, employ, allow, permit or use entertainers under the age of twenty-one (21) years." This limitation is apparently based upon the legal prohibition in our State against the sale of alcoholic beverages to persons under the age of 21 years. But *drinking* alcoholic beverages and *working* as an entertainer in licensed premises are not necessarily related.

We take judicial notice of the fact that many nationally famous entertainers are under the age of 21 years. Banning them from earning a living in their chosen field, merely

because of their age, while subjecting those over 18 to service in the armed forces, appears to be patently unreasonable. This section of the ordinance is deemed to be invalid in that it unreasonably denies persons the opportunity to earn a livelihood, prohibits licensees from engaging their services for entertainment purposes only fosters no obvious good and curbs no threatened evil. Other provisions of the ordinance already preclude lewd performances by them, and our labor laws and A. B. C. regulations also further limit and regulate their engagements and performances.

## V

Section 5 prohibits licensees from permitting or suffering *"any female person to perform* for hire, and for the entertainment of patrons, *any dances, ballet, acrobatics or public performances of any kind, in which body movement constitutes the principal or integral part of such performance."* (Emphasis added). Excepted from the prohibition is "playing musical instruments as a member of a band." We need not consider this exception. We address ourselves solely to the italicized portion of the section.

The challenged portion of this section is too broad in scope. It would ban "any female person" to perform for hire and for the entertainment of patrons the most innocent "anniversary waltz" at a golden wedding celebration. Ballet, a very popular form of entertainment, would be prohibited, as would be time-honored acrobatics, Indian club juggling, or *any kind* of public performance which involves principally "body movement." There is no similar prohibition as to male entertainers and no valid reason exists for the distinction under this section. We may guess at a legitimate intent and purpose in banning "body movement" by "female entertainers," but the excessively comprehensive language employed would expose to the penalties of the ordinance the most innocent conduct. We hold this provision in section 5 to be invalid.

## VI

Section VI prohibits a licensee from employing "any female bartender." Expressly exempted from the prohibition are (a) any female licensee from tending her own bar and (b) any individual male licensee from employing his wife as bartender.

Plaintiffs claim that this section is repugnant to existing laws, giving females the right to equal opportunities of employment. Reference is made to 42 *U. S. C. A.* § 2000e–2 (a) and *N. J. S. A.* 10:1–1. We are mindful of the recent decision by our courts in *Gallagher v. Bayonne,* 106 *N. J. Super.* 401 (App. Div. 1969), affirming 102 *N. J. Super.* 77 (Ch. Div. 1968), and affirmed 55 *N. J.* 159 (1969), declaring invalid a municipal ordinance which prohibited the serving of liquor in the city's taverns to women "at the bar." In brief, plaintiffs maintain that a prohibition against employing "female bartenders," with the two exceptions noted, unlawfully discriminates against women, denies them equal protection under the law and violates their rights under federal and state laws.

Plaintiffs concede that "there may be areas of employment in which one might prefer not to have women employed." There may be a legitimate discrimination in the employment field where there is a reasonable and rational basis for the discrimination. Thus, the refusal to employ women in an all-male Turkish bath establishment is justifiable because of the overriding public policy of safeguarding decency and morality. Individual rights must yield to the police powers, properly exercised in the interest of the public health, morals, safety and general welfare.

■ ■ Equal protection of the law does not foreclose classification, so long as there is a reasonable basis in relation to the specific objective of the legislation. Nor is it enough to demonstrate that the legislative object might have been more fully achieved by another, more expansive classification, as for example, in the instant case, not mak-

ing exception where one is a female owner or wife of an individual owner. *N. J. Restaurant Ass'n v. Holderman,* 24 *N. J.* 295 (1957). The Legislature may recognize degrees of harm and hit the evil where it is most felt. *Id.,* at 300.

 Our Supreme Court was faced with this specific issue — the legal sufficiency of a municipal ordinance prohibiting, with certain exceptions, female bartenders — in *Guill v. Mayor, etc. of Hoboken,* 21 *N. J.* 574 (1956). It held that the ordinance did not contain an inherently arbitrary or unreal classification, did not constitute an unlawful exercise of police power, and did not deny equal protection of the laws. Unless and until our Supreme Court decides otherwise, that decision is binding upon us. For the reasons expressed therein, we find section 6 valid. See, too, *Goesaert v. Cleary,* 335 *U. S.* 464, 69 *S. Ct.* 198, 93 *L. Ed.* 163 (1948), upon which our Supreme Court relied in *Guill,* in which the same conclusion was reached, despite the "vast changes in the social and legal position of women."

The judgment under review, except as modified herein, is affirmed. No costs.