57 N.J. 180 (1970)
270 A.2d 628
PATERSON TAVERN & GRILL OWNERS ASSN., INC., a NON-PROFIT CORPORATION OF NEW JERSEY, ET AL., PLAINTIFFS-APPELLANTS,
v.
THE BOROUGH OF HAWTHORNE, A MUNICIPAL CORPORATION, ET AL., DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued September 14, 1970.
Decided November 9, 1970.
*181 Mr. William J. Rosenberg argued the cause for appellants (Mr. George L. Garrison and Mr. Harold Goldman, on the brief).
Mr. Douglas C. Borchard, Jr. argued the cause for respondents (Messrs. Evans, Hand, Allabough & Amoresano, attorneys).
The opinion of the court was delivered by JACOBS, J.
The Appellate Division upheld a Hawthorne ordinance which prohibited licensed taverns in the Borough from employing female bartenders; the ordinance exempted female licensees tending their own bars as well as wives of *182 male licensees. 108 N.J. Super. 433, 441 (1970). Plaintiffs, the Paterson Tavern & Grill Owners Assn., Inc. and Harry Shortway, a licensed tavern keeper, appealed to this Court under R. 2:2-1(a)(1).
In 1968 the Borough of Hawthorne, acting in the exercise of police powers delegated by the Legislature (see N.J.S.A. 33:1-40; cf. N.J.S.A. 40:48-1, 2; N.J.S.A. 40:52-1), adopted an ordinance which embodied prohibitions of certain employments and activities in licensed premises. The Appellate Division struck some of the prohibitions while sustaining others. 108 N.J. Super. at 437-442. The Borough took no appeal and the plaintiffs have confined their appeal to that part of the judgment below which sustained the prohibition in the ordinance against the employment of female bartenders. We shall therefore confine ourselves to that single issue, passing any question as to the standing of the tavern owners' Association. See 108 N.J. Super. at 436-437; Elizabeth Federal Savings & Loan Ass'n v. Howell, 24 N.J. 488, 499 (1957); Hudson Bergen, etc., Ass'n v. Board of Comm'rs. of City of Hoboken, 135 N.J.L. 502, 510 (E. & A. 1947).
Though the plaintiffs have sought to invoke provisions of the Federal and State Civil Rights Acts (42 U.S.C.A. § 2000e-2(a); N.J.S.A. 10:1-1) we find no occasion for doing so. The Federal Act applies to an employer engaged in an industry affecting interstate commerce and employing 25 or more employees (42 U.S.C.A. § 2000e(b)); there is nothing before us to indicate that any of the tavern keepers here involved is such an employer. The Act contains a provision that it shall not be an unlawful practice to employ any individual on the basis of sex where sex is a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C.A. § 2000e-2(e). The pertinence of this clause in cases involving employers otherwise governed by the Act need not detain us here. Cf. Kanowitz, "Sex-Based Discrimination in American Law, I," 11 St. Louis University L.J. 293, 329 *183 (1967); Miller, "Sex Discrimination and Title VII of the Civil Rights Act of 1964," 51 Minn. L. Rev. 877, 894 (1967); Kanowitz, "Sex-Based Discrimination in American Law, III," 20 Hastings L.J. 305, 320, 341 (1968); Notes 1968 Duke L.J. 671, 705; 42 So. Cal. L. Rev. 183, 200 (1969).
Our State Civil Rights Act provides that the right of citizens to hold office or employment "shall not be denied or abridged on account of sex or marital status" and that "there shall be no discrimination based on sex or marital status" in appointments or other matters pertaining "to such office or employment." N.J.S.A. 10:1-1. Though the intended scope of the statute is not entirely clear we assume, solely for present purposes, that it covers private as well as public employment and prohibits the wholly arbitrary refusal by an employer to engage a fully qualified woman only because she is a woman. But that has no relation to the matter before us since here none of the employers is seeking to exclude female bartenders; on the contrary, they are seeking to employ them but have been precluded from doing so by the terms of the ordinance. If that ordinance were deemed currently to represent a reasonable exercise of the police power without infringement on any constitutional principle, then N.J.S.A. 10:1-1 would present no obstacle, for that particular statutory enactment was never intended to bar reasonable police power discriminations (108 N.J. Super. at 441) or to nullify specific legislative discriminations such as those embodied in N.J.S.A. 34:2-24, 28, 30.
Our early cases displayed no hesitancy in sustaining prohibitions against female bartenders as reasonable and constitutional exercises of the police power. See Hoboken v. Goodman, 68 N.J.L. 217 (Sup. Ct. 1902); Hoboken v. Greiner, 68 N.J.L. 592 (Sup. Ct. 1902); Annot., 172 A.L.R. 620 (1948). But they arose in a different social and moral climate when judges, along with others, entertained Victorian ideas as to women and their proper place in the scheme of things. Justice Bradley voiced then common sentiments when he said that he thought woman's natural "timidity and *184 delicacy" unfitted her for most civil occupations, that she properly belonged in the "domestic sphere," that her paramount mission was to fulfill "the noble and benign offices of wife and mother," that her pursuit of an independent career would be inimical to family harmony, and that the rules of law should be adapted accordingly. Bradwell v. Illinois, 16 Wall. 130, 141, 21 L.Ed. 442, 446 (1873).
Though by the mid-twentieth century, startling changes had occurred in the social and legal rights of women and in society's overall treatment of sexuality, the judges were still unwilling to strike down continuing legislative restrictions against female bartenders. In Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948) a divided three-judge District Court had upheld a Michigan statute which provided for the licensing of bartenders but prohibited any woman (except the wife or daughter of the male tavern keeper) from obtaining a bartender's license. The Supreme Court, with three Justices dissenting, affirmed in an opinion which noted that although "women may now have achieved the virtues that men have long claimed as their prerogatives and now indulge in vices that men have long practiced," the States are not constitutionally precluded "from drawing a sharp line between the sexes, certainly in such matters as the regulation of the liquor traffic." 335 U.S. at 466, 69 S. Ct at 199, 93 L.Ed. at 165. The opinion did not elaborate on its position that legislatures are not constitutionally required to reflect sociological insights or shifting social standards (but cf. Brown v. Board of Education, 347 U.S. 483, 492-496, 74 S.Ct. 686, 690-693, 98 L.Ed. 873, 879-881 (1954)) nor did it deal with the scope of women's ever-broadening rights to seek and obtain gainful employment. See Keeton, C.J., dissenting in State v. Burke, 79 Idaho 205, 312 P.2d 806, 808 (1957); Kanowitz, "Constitutional Aspects of Sex-Based Discrimination in American Law," 48 Neb. L. Rev. 131, 167 (1968). Goesaert was relied upon by this Court in Guill v. Mayor and Council of City of Hoboken, 21 N.J. 574, 585 (1956) which the Appellate Division, as *185 an intermediate judicial tribunal, properly considered binding upon it in the case at hand. 108 N.J. Super. at 442; see Hargens v. Alcoholic Beverage Control Appeals Board, 263 Cal. App.2d 601, 69 Cal. Rptr. 868 (Ct. App. 1968); Henson v. City of Chicago, 415 Ill. 564, 114 N.E.2d 778 (1953); but cf. Brown v. Foley, 158 Fla. 734, 29 So.2d 870, 871 (1947); Loring, C.J., dissenting in Anderson v. City of St. Paul, 226 Minn. 186, 32 N.W.2d 538, 548-552 (1948).
Though Goesaert has not been overruled (cf. McCrimmon v. Daley, 418 F.2d 366, 369 (7 Cir. 1969)) its holding has been the subject of academic criticism (Kanowitz, supra, 11 St. Louis University L.J. at 328-29; Oldham, "Sex Discrimination and State Protective Laws," 44 Denver L.J. 344, 373-74 (1967)) and its sweeping statement that the States are not constitutionally precluded from "drawing a sharp line between the sexes" (335 U.S. at 466, 69 S.Ct. at 199, 93 L.Ed. at 165) has been the subject of increasing limitation. See Seidenberg v. McSorley's Old Ale House, Inc., 308 F. Supp. 1253, 1260 (S.D.N.Y. 1969); United States ex rel. Robinson v. York, 281 F. Supp. 8, 16 (D. Conn. 1968); White v. Crook, 251 F. Supp. 401, 408 (M.D. Ala. 1966); cf. Karczewski v. Baltimore and Ohio Railroad Company, 274 F. Supp. 169, 178-180 (N.D. Ill. 1967); Owen v. Illinois Baking Corporation, 260 F. Supp. 820, 821-822 (W.D. Mich. 1966); Commonwealth v. Daniel, 430 Pa. 642, 243 A.2d 400, 404 (1968).
In White (251 F. Supp. 401) the court struck down an Alabama statute which prohibited women from serving as jurors; in Owen (260 F. Supp. 820) and Karczewski (274 F. Supp. 169) the courts declared unconstitutional the denial of consortium recoveries to wives where such recoveries were allowed to husbands; In York (281 F. Supp. 8) and Daniel (243 A.2d 400) the courts struck sex-based discriminatory sentencing practices, with the Daniel court distinguishing Goesaert on the ground that it dealt not with criminal sentencing but with the "difference between men and women in *186 matters of employment" (243 A.2d at 404); and in Seidenberg (308 F. Supp. 1253) the court restrained a tavern keeper from excluding women patrons, distinguishing Goesaert on the ground that women bartending might, in the allowable legislative judgment, "give rise to moral and social problems" whereas most taverns admittedly cater to both men and women without occasioning such problems. 308 F. Supp. at 1260. Oldham, supra, noting that the laws against women bartending "depend upon a social view of morality which does not appear relevant to the latter half of the twentieth century" (44 Denver L.J. at 372 fn. 130), has pointed out that the suggested "moral and social problems" have never materialized in communities where the employment of women bartenders has been lawful and frequent. 44 Denver L.J. at 364 fn. 104; see Loring, C.J., in Anderson v. City of St. Paul, supra, 32 N.W.2d at 552. And Kanowitz, supra, has forcefully suggested that the cited cases upholding the various recent attacks on sex-based discrimination may well augur the impending demise of Goesaert itself. 48 Neb. L. Rev. at 156-57; see Gallagher, et al. v. City of Bayonne, 102 N.J. Super. 77, 81-82 (Ch. Div. 1968), aff'd, 106 N.J. Super. 401 (App. Div. 1969), aff'd, 55 N.J. 159 (1969).
However, we need not pursue the constitutional issue dealt with in Goesaert for we are satisfied that, in the light of current customs and mores, the municipal restriction against female bartending may no longer fairly be viewed as a necessary and reasonable exercise of the police power; it must therefore be stricken. See One Eleven Wines & Liquors, Inc. v. Div. Alcoholic Bev. Cont., 50 N.J. 329, 341 (1967): "restrictions adopted in the exercise of police powers must be reasonable and not go beyond the public need"; see also Gallagher, et al. v. City of Bayonne, supra, 106 N.J. Super. at 404-405; Brown v. Foley, supra, 29 So.2d at 871; Loring, C.J., in Anderson v. City of St. Paul, supra, 32 N.W.2d at 549. In the One Eleven case this Court upset a regulation which prohibited homosexuals from congregating in *187 taverns. In the course of its opinion it summarily rejected the suggestion that their mere presence was likely to lead to misconduct, pointing out that the licensee always has the "comprehensive capacity and responsibility, at the peril of its license, for precluding offensive conduct and for conducting its establishment in lawful and orderly fashion." 50 N.J. at 340. A similar response may readily be made to any suggestion that a tavern keeper's employment of a barmaid may lead to improprieties at the licensed premises.
In Gallagher the Appellate Division affirmed a judgment which invalidated a municipal restriction against the service of alcoholic beverages to women at public bars. Judge Collester's opinion for the Appellate Division pointed out that while, during the early days of liquor control, "it may have been deemed prudent to limit the rights of women who patronized taverns, that time has long since passed." 106 N.J. Super. at 404. He noted that it is now common for women to be served at bars and that "in these enlightened days of the 1960's the fact that women congregate and are served at bars cannot be said to be a threat to the health, safety and welfare of the public." 106 N.J. Super. at 404-405. Citing the One Eleven case he concluded that, since police power restrictions must be reasonable and not go beyond the public need, the municipal restriction against service to females at public bars may not stand. 106 N.J. Super. at 405. This Court adopted Judge Collester's opinion in its essential aspects. 55 N.J. 159.
In Brown v. Foley, supra, the Florida Supreme Court invalidated a municipal ordinance which prohibited female bartending. It pointed out that the municipality had power to enact only reasonable ordinances and it found no sound reason for the ordinance which recognized "that women may frequent bars and engage in every practice as men save and except that they shall not serve liquor by the drink over the bar. ..." 29 So.2d at 871. In Anderson v. City of St. Paul, supra, the Minnesota Supreme Court, by a vote of 4 to 3, sustained a municipal ordinance which prohibited female bartending. *188 Chief Justice Loring filed a persuasive dissenting opinion in which he elaborated on the view that the ordinance did not represent a reasonable exercise of the delegated police power. He noted that the precedents relied on by the majority were ancient ones with little current relevancy and, though the following remarks were made by him over two decades ago, they have clear pertinency today:
Formerly, barrooms catered only to men. Women of good character did not patronize the open saloon. To do so would have besmirched their reputations. Now, in many cases, as shown by the evidence herein, women from a major part of the patronage of the barroom. Hotels and clubs have women's cocktail lounges. Women of good character not only patronize bars, but are employed as waitresses, hostesses and bartenders. No one in this state has been heard to say that their employment in such establishments has been a hazard to public morals or health or to the regulation of the liquor business. * * *
* * * In my view, the ordinance unreasonably discriminates against women serving liquor from behind the bar in favor of men and of those women who are free to accept employment in any of the other capacities in which they are commonly employed in a barroom, including the mixing and serving of liquor. Certainly, women are as capable of mixing and serving drinks as men are. How they can be any more of a threat to morals when serving liquor from behind the bar than in front of it or elsewhere in the room is impossible to conceive. 32 N.W.2d at 550-551.
It must be borne in mind that we are not in this case concerned with the rights of licensees to confine their bartending entirely to males; we leave that for another day. Here the licensees are willing to employ women bartenders with full recognition of the tavern keeper's ever-present responsibility for conducting his establishment in lawful and orderly fashion. 50 N.J. at 340. The licensees want the freedom of selecting women bartenders whom they find to be fully qualified and the women want the freedom to seek and obtain bartending employments for which they consider themselves fully qualified. These freedoms should not be curbed unless the public interest so dictates. Although in earlier times, comparable restrictions in the liquor field were generally sustained, the recent opinions in One Eleven and Gallagher *189 indicate that our courts will now direct their attention more pointedly to the controlling requirements of reasonableness and public need. One Eleven Wines & Liquors, Inc. v. Div. Alcoholic Bev. Cont., supra, 50 N.J. at 341; Gallagher, et al. v. City of Bayonne, supra, 106 N.J. Super. at 405.
We are satisfied that Hawthorne's prohibition of female bartenders is unreasonable and goes beyond any public need. It is blanket in nature and seeks to exclude female bartenders, no matter how individually qualified, from all licensed establishments, no matter how suitably conducted. While the law may look to the past for the lessons it teaches, it must be geared to the present and towards the future if it is to serve the people in just and proper fashion. In the current climate the law may not tolerate blanket municipal bartending exclusions grounded solely on sex. To the extent that Guill v. Mayor and Council of City of Hoboken, supra, 21 N.J. 574 embraced a contrary approach it is hereby overruled. The plaintiffs are entitled to summary relief and accordingly the Appellate Division's judgment on the issue dealt with in this opinion is:
Reversed.
For reversal  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For affirmance  None.