Tri-State Promotions, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellee.

170

Argued November 8, 1974, before Judges WILKINSON, JR., ROGERS, and BLATT, sitting as a panel of three.

*John F. Lambest,* with him *James J. Dodara* and *Zappala & Zappala,* for appellant.

*J. Leonard Langan,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, January 28, 1975:

Tri-State Promotions, Inc. (Tri-State), the appellant in this action, holds a hotel liquor license for use in doing business as the Zodiac Club in White Oak, Pennsylvania. Between February and June of 1972 the Liquor Control Board (Board) issued four separate citations against Tri-State, the first three of which alleged that it had on several occasions violated Section 493(10) of the Liquor

Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-493(10), in permitting dancing and/or entertainment on the licensed premises without first procuring from the Board a special permit for such activities. Tri-State had applied for such a permit in September of 1971 but the Board never issued one until May of 1972. The fourth citation, issued after Tri-State had obtained the necessary permit, alleged a violation of the Board's regulations which provide that licensees may permit dancing in their licensed establishments only during the hours when the sale of liquor or malt or brewed beverages is permitted. 40 Pa. Code §5.35(a). On Sundays, during hours when such sales were prohibited under Tri-State's license, the premises had been leased to Spectrum Productions, Inc. (Spectrum) for teenage dances.

After hearings, the Board issued opinions in which it found that Tri-State had in fact violated the statute and regulations. The Board issued four orders, the first of which imposed a fine of $300. The other three orders provided that Tri-State's license be suspended for periods of ten days, fifteen days and thirty days respectively. Tri-State took appeals to the Court of Common Pleas of Allegheny County, where the cases were consolidated. After a hearing that court affirmed the Board. An appeal to this Court ensued.

Tri-State argues first that it should not be held responsible for violations which took place on Sundays, when the premises were under the control of Spectrum. The lease between Tri-State and Spectrum was admitted into evidence during the hearing before the court below, and a rider to that lease provided in part as follows: "3. The premises leased may be only used for teen-age dances . . . . Violation of this clause will mean an instant forfeiture of this Lease." It is clear that Tri-State not only permitted the Sunday dancing but actually contracted that the premises be used exclusively for that purpose. Tri-State controlled the use of the premises on

Sundays by virtue of its lease arrangement and thus cannot avoid responsibility for the dancing merely because the premises were in the possession of a sub-lessee.

Secondly, Tri-State asserts that it should not be held responsible for its failure to have an amusement permit during the eight months when its application for such a permit was pending before the Board and was not being acted upon. Tri-State cites *Obradovich Liquor License Case*, 386 Pa. 342, 126 A. 2d 435 (1956), in which the Court interpreted Section 404 of the Liquor Code. That section dictates that the Board *shall* issue a *license* for a hotel or restaurant upon receipt of the application, the proper fees and bond and upon being satisfied that certain other conditions are met. The statute then enumerates special situations where the Board may exercise discretion. The provision of the Liquor Code dealing with the Board's authortiy to grant special permits for entertainment, however, is entirely different, and at least one court has in the past recognized the distinction. *Yarosz's License*, 47 D.&C. 404 (1943). Section 493(10) of the Liquor Code, 47 P.S. §4-493(10) provides:

"It shall be unlawful—

. . . .

"(10) For any licensee, his servants, agents or employes, except club licensees, to permit in any licensed premises or in any place operated in connection therewith, dancing, theatricals or floor shows of any sort, or moving pictures other than television, . . . unless the licensee shall first have obtained from the board a special permit to provide such entertainment, or for any licensee, under any circumstances, to permit in any licensed premises any lewd, immoral or improper entertainment, regardless of whether a permit to provide entertainment has been obtained or not. The board shall have power to provide for the issue of such special permits, and to collect a fee for such permits equal to one-fifth of the

annual license fee but not less than twenty-five dollars ($25). All such fees shall be paid into the State Stores Fund. No such permit shall be issued in any municipality which, by ordinance, prohibits amusements in licensed places. Any violation of this clause shall, in addition to the penalty herein provided, subject the licensee to suspension or revocation of his permit and his license."

Unlike Section 404, this section does not mandate that the Board act if certain conditions are satisfied nor does it delineate a limited situation where the Board may exercise its discretion, as does Section 404. Section 493(10) merely gives the Board the "power to provide for the issue of such special permits." The Board itself in the exercise of its rule-making function has promulgated 40 Pa. Code §5.31, which establishes the appropriate procedure for the grant of such permits, termed by the Board as "amusement permits." Section 5.31(c) states: "An original Amusement Permit will not be issued to any licensee against whom revocation or criminal proceedings are pending." Our review of the record discloses that Tri-State had been cited on October 26, 1971 for the following violations:

"1. The licensee, by its servants, agents or employes sold, furnished and/or gave or permitted such sale, furnishing and/or giving of liquor and/or malt or brewed beverages to minors, on August 27, 1971.

"2. The licensee, by its servants, agents or employes permitted entertainment and/or dancing on the licensed premises without first procuring an Amusement Permit from the Pennsylvania Liquor Control Board, on August 6, 7, 8, 27, and 28, 1971.

"3. The licensee failed to display its Hotel Liquor License under a transparent substance in a conspicuous space on the licensed premises, on August 27, 28, 1971." Although these charges are not now before us, the

timing of the citation is significant in that it was issued only one month after Tri-State applied for the amusement permit and it related to violations which allegedly occurred before the date of application. Because these were violations which ultimately could have resulted in revocation of Tri-State's license, the Board properly withheld approval of the application pending disposition of the charges. By the time a hearing was held and an order was issued concerning them, however, citations relating to the subsequent violations now before us were being issued. Essentially, the delay was a result of the fact that there were continually unresolved citations lodged against Tri-State. The Board, according to its own regulations, was clearly justified in withholding approval on that basis.[1]

Finally, Tri-State attacks as unconstitutional the Board's regulation which permits dancing in licensed establishments only during hours when the sale of liquor or malt or brewed beverages is permitted. Tri-State contends that this regulation is an unreasonable and unduly oppressive exercise of the police power which deprives a licensee of his right to own and enjoy property and impairs his right to contract. In *Tahiti Bar, Inc. Liquor License Case,* 395 Pa. 355, 360, 150 A. 2d 112, 115 (1959), the Supreme Court of Pennsylvania pointed out: "There is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages. See: Goesaert v. Cleary, 335 U.S. 464, 465, 69 S.Ct. 198." Because the state may absolutely forbid or may license the sale of intoxicating liquors, it may impose such conditions upon the granting of licenses as it sees fit, and one who accepts

---

1. We note that even in May of 1972 when the amusement permit was finally issued by the Board there were still citations pending against Tri-State; it does not, of course, challenge the validity of the Board's action at that time.

such a license must be deemed to consent to all proper conditions and restrictions which have been or may be imposed in the interest of the public morals or safety. *Tahiti Bar, supra.* That case dealt with the state's power to prescribe the type and character of entertainment to be conducted on licensed premises and the court there rebuffed a constitutional challenge to the Board's regulations on the basis that they violated the individual's freedom of speech and expression. Although this case involves a somewhat different constitutional attack, the same principles apply. "The sole impediment to such prescription by regulation is that the regulation must bear a reasonable relationship to the eradication of the evils so frequently and historically associated with the use and sale of alcoholic beverages." *Tahiti Bar, supra,* at 369, 150 A.2d at 120. *See California v. LaRue,* 409 U.S. 109 (1972). The regulation here concerned was obviously designed to aid enforcement of the laws restricting the hours during which licensees are permitted to sell. If licensed establishments were permitted to remain open and provide entertainment during hours when liquor sales were prohibited, it would become extremely difficult if not impossible to police unlawful sales effectively.

The order of the lower court is, therefore, affirmed.