Clydie Marie **PERRY** et al., Plaintiffs,

v.

**GRENADA MUNICIPAL SEPARATE SCHOOL DISTRICT** et al.,
Defendants.

No. WC 6736–S.

United States District Court
N. D. Mississippi, W. D.

June 20, 1969.

James Finney, New York City, Reuben Anderson, Jackson, Miss., for plaintiffs.

William H. Fedric, Grenada, Miss., Thomas H. Watkins, Jackson, Miss., for defendants.

## OPINION

ORMA R. SMITH, District Judge.

On September 18, 1967, Clydie Marie Perry filed a complaint in the case sub judice seeking a preliminary and permanent injunction compelling the school district to admit her to the public schools of Grenada, Mississippi. The population of Grenada County, where the municipality of Grenada is located, is approximately 18,733 people. The plaintiff brought the action on behalf of all unwed mothers of school age residing in Grenada County who are affected by the policy of the school board of denying admission to unwed mothers. On November 30, 1967, an amended complaint was filed, adding another unwed mother, Emma Jean Wilson, as a party plaintiff. The Amended Complaint charges that the policy of refusing unwed mothers admission to school is enforced on a racially discriminatory basis. The suit is brought under 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

On December 21, 1967, the Court entered an order overruling the motion for a preliminary injunction, but retained jurisdiction of the cause. The Court reserved ruling on the issue of the class action. The parties stipulated that the policy of excluding unwed mothers is enforced in a nondiscriminatory manner without regard to race, creed or color.

A hearing was held in the cause on January 28, 1969, in the United States District Court, Oxford, Mississippi. At the conclusion of the hearing the Court entered an order which set forth a schedule for briefs and which directed counsel to specifically consider the issue of whether exclusion of a mother of an illegitimate child was too strict in that the rule does not provide for a later hearing on the rehabilitation or marriage of the mother.

There are three issues before the Court:

1) Whether the Court has jurisdiction to consider the entry of an injunction to prevent or restrict the enforcement of the policy of the school board.

2) Whether the plaintiffs are representatives of a proper class within the scope of Rule 23 of the Federal Rules of Civil Procedure.

3) Whether the policy of the school board in excluding unwed mothers violates the Due Process Clause or the Equal Protection Clause of the Fourteenth Amendment of the Constitution.

## JURISDICTION

The defendants contend that since the policy of exclusion has no racial basis, there is no substantial federal question and hence the Court has no jurisdiction. The defendants further allege that the case involves only matters of local law which should be settled by the state courts. As authority the case of Steier v. New York State Education Commissioner, 271 F.2d 13, 2 Cir.1959, is cited.

Since the *Steier* case, there have been numerous decisions in which the Courts have considered issues involving school matters which were not based on racial discrimination. In a recent Supreme Court case, the Court held unconstitutional a school policy forbidding the wearing of a type of arm band, Tinker v. Des Moines Independent Community School District et al, 393 U.S. 503, 89 S. Ct. 733, 21 L.Ed.2d 731 (Feb. 24, 1969). The basis of jurisdiction in the *Tinker* case was 42 U.S.C. § 1983. In several cases the Fifth Circuit has assumed ju-

risdiction over school matters when the basic issues did not involve racial discrimination. Burnside v. Byars, 363 F. 2d 744, 5 Cir.1966; Dixon v. Alabama State Board of Education, 294 F.2d 150, 5 Cir.1961; Wright v. Texas Southern University, 392 F.2d 728, 5 Cir.1968. Hence there seems to be adequate authority for the fact that a federal district court can assume jurisdiction of a school case under 42 U.S.C. § 1983, when there is a charge of a violation of constitutional rights, regardless of whether the charge has racial implications.

█ The defendants further assert that an injunction could not be issued unless done so by a three-judge court. The basis of this contention is that 28 U.S.C. § 2281 prohibits an injunction by a single judge in the case sub judice. Yet the policy of the Grenada School Board does not have state-wide application. To merit a three-judge court under 28 U.S.C. § 2281 the policy must necessarily have state-wide application. The Grenada School Board does not meet the state-wide criteria. Phillips v. United States of America, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800, 1941.

█ Finally, the defendants state that the Court should decline jurisdiction on the basis of the doctrine of abstention. Yet in the case sub judice the main issue is whether the policy of the school board violates the Due Process Clause or the Equal Protection Clause of the Fourteenth Amendment of the Constitution. The main issue is federal rather than state, and under the circumstances, this is not a proper case for the doctrine of abstention.

## CLASS ACTION

█ The plaintiffs have failed to establish in this action the presence of a class which is so numerous that it meets the requisites of Rule 23(a) of the Federal Rules of Civil Procedure. There is no evidence that there is a sufficient number of unwed mothers in the Grenada Area that wish to seek admission to the Grenada Municipal School District. Hence the case will fail as a class action

and the cause will be considered on the basis of the two plaintiffs before the Court.

## POLICY OF THE SCHOOL BOARD

The crux of this cause is whether the policy of the school board of denying admission to unwed mothers violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution. The case does not involve the curtailment of first amendment rights which has produced much litigation in recent years. Ferrell et al v. Dallas Independent School District et al, 392 F.2d 697, 5 Cir.1968. Tinker v. Des Moines Independent Community School District et al, *supra*. Neither does it fall within the ambit of cases involving whether a student received due process of law before being expelled from a school or university. Wright v. Texas Southern, *supra*; Dixon v. Alabama State Board of Education, *supra*. The case sub judice falls within the category of cases involving whether there is invidious discrimination which violates the Equal Protection Clause of the Fourteenth Amendment.

█ The standards of the Equal Protection Clause are broad; the generalities of the subject are not in dispute; the application of the Equal Protection Clause turns peculiarly on the particular circumstances of each case. Goesaert v. Cleary, 335 U.S. 464, 93 L.Ed. 163, 69 S.Ct. 198, 1948. The Equal Protection Clause does not force the laws of each state in the Union into the same mold. A state may classify people but the classification must have some purpose and must not contain the kind of discrimination against which the Equal Protection Clause affords protection, Railway Express Agency v. People of State of New York, 336 U.S. 106, 69 S.Ct. 463, 93 L. Ed. 533, 1948. As stated in Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559, 1942, "Equal protection of the laws is something more than an abstract right. It is a command which the state must respect, the benefits of which every person may demand. Not the least merit of our constitutional system is

that its safeguards extend to all—the least deserving as well as the most virtuous." 316 U.S. 406, 62 S.Ct. 1162, 86 L.Ed. 1563.

The Supreme Court has laid down certain rules to test invidious discrimination:

"The rules for testing a discrimination have been summarized as follows: 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. Rindsley v. Natural Carbonic Gas Company, 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 [Ann.Cas.1912 C. 160].

To these rules we add the caution that 'Discriminations of an unusual character especially suggests careful consideration to determine whether they are obnoxious to the constitutional provision.' Louisville Gas & Electric Company v. Coleman, 277 U.S. 32, 37–38, 48 S.Ct. 423, 72 L.Ed. 770, 774; Hartford Steam Boiler Inspection & Insurance Co. v. Harrison, 301 U.S. 459, 462, 57 S.Ct. 838, 81 L.Ed. 1223, 1226." Morey v. Doud, 354 U.S. 457, 1 L. Ed.2d 1485, 77 S.Ct. 1344, 1349, 1957.

The *Goesaert* case, supra, is frequently cited for the fact that a state can make reasonable classifications. In that case the Supreme Court upheld a state statute which prevented a woman not the wife or daughter of a bar owner from working as a bar maid. Yet it is important to note that the Supreme Court was concerned with the age old problem of the regulation of liquor traffic. The Court stated that the state legislature did not have to go the full length of prohibition if it believed that as to a defined group of females other factors operated to either eliminate or reduce the moral or social problems otherwise calling for prohibition. Hence rather than excluding persons, the Court was thinking in terms of admitting persons to a situation possibly dangerous to morals, on the basis of alleviating factors.

In Schware v. Board of Bar Examiners of the State of New Mexico, 353 U. S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796, 1957, the Supreme Court decided the issue of exclusion of a person from the practice of law on the basis of lack of good moral character. The Court held that a state could not exclude a person from the practice of law or from any other occupation for reasons that contravene the Due Process Clause or the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court reviewed the reasons for excluding the man and stated the following:

"The State contends that even though the use of aliases, the arrests, and the membership in the Communist Party would not justify exclusion of petitioner from the New Mexico bar if each stood alone, when all three are combined his exclusion was not unwarranted. We cannot accept this contention. In the light of petitioner's forceful showing of good moral character, the evidence upon which the State relies—the arrests for offenses for which petitioner was neither tried nor convicted, the use of an assumed name many years ago, and membership in the Communist Party during the 1930's—cannot be said to raise substantial doubts about his present good moral character. There is no

evidence in the record which rationally justifies a finding that Schware was morally unfit to practice law."

"On the record before us we hold that the State of New Mexico deprived petitioner of due process in denying him the opportunity to qualify for the practice of law." Schware v. Board of Bar Admission, Supra, 353 U.S. 246, 77 S.Ct. 760.

Hence the Supreme Court considered the man's present moral character. The Court acknowledged the past acts, but recognized the ability of the man to reestablish his good reputation. This indicates that any rule which fastens on one wrong, and never permits a person to change his position or condition is indeed on tenuous grounds.

■ A similar unrelenting rule was struck down by the Supreme Court in Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675, 1965. In *Carrington* the Court considered a Texas statute which prevented service men from voting in Texas as long as they remained a member of the Armed Forces. The Court made several statements in the opinion which are pertinent to our consideration:

"But the fact that a State is dealing with a distinct class and treats the members of that class equally does not end the judicial inquiry. 'The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose * * *.'" Carrington, Supra, 380 U.S. at 93, 85 S.Ct. at 778.

"By forbidding a soldier ever to controvert the presumption of non-residence, the Texas Constitution imposes an invidious discrimination in violation of the Fourteenth Amendment. 'There is no indication in the Constitution that * * * occupation affords a permissible basis for distinguishing between qualified voters within the state.'" Carrington, Supra, 380 U.S. at 96, 85 S.Ct. at 780.

"We emphasize that Texas is free to take reasonable and adequate steps, as have other States, to see that all applicants for the vote actually fulfill the requirements of bona fide residence, but this constitutional provision goes beyond such rules. 'The presumption here created is * * * definitely conclusive—incapable of being overcome by proof of the most positive character.'" Carrington, Supra, 380 U.S. at 96, 85 S.Ct. at 780.

In the present age of enlightenment no one can deny the importance of education to our youth. As was stated in the Dixon case: "It requires no argument to demonstrate that education is vital and, indeed, basic to civilized society. Without sufficient education the plaintiffs would not be able to earn an adequate livelihood, to enjoy life to the fullest, or to fulfill as completely as possible the duties and responsibilities of good citizens". Dixon v. Alabama State Board of Education, 294 F.2d at 157.

The plaintiffs have introduced evidence which tends to show that unwed mothers, who are allowed to continue their education, are less likely to have a second illegitimate child. In effect the opportunity to pursue their education gives them a hope for the future so that they are less likely to fall into the snare of repeat illegitimate births. On the other hand the Court is aware of the defendants' fear that the presence of unwed mothers in the schools will be a bad influence on the other students vis-a-vis their presence indicating society's approval or acquiescence in the illegitimate births or vis-a-vis the association of the unwed mother with the other students.

The Court can understand and appreciate the effect which the presence of an unwed pregnant girl may have on other students in a school. Yet after the girl has the baby and has the opportunity to realize her wrong and rehabilitate herself, it seems patently unreasonable that she should not have the opportunity to go before some administrative body of the school and seek readmission on the basis of her changed moral and physical condition. Certainly this would be the

cause if a girl had been raped and forced to bear the child of another.

Certainly school officials recognize the importance of education and the effect of a rigid rule which forever bars an individual from obtaining an education. The Court can appreciate that the Grenada School District might not have the funds to set up separate facilities for the education of pregnant girls. The purpose for excluding such girls is practical and apparent. But after the girl has the child, she should have the opportunity for applying for readmission and demonstrating to the school that she is qualified to continue her education. The continued exclusion of a girl without a hearing or some other opportunity to demonstrate her qualification for readmission serves no useful purpose and works an obvious hardship on the individual. It is arbitrary in that the individual is forever barred from seeking a high school education. Without a high school education, the individual is ill equipped for life, and is prevented from seeking higher education.

The Court would like to make manifestly clear that lack of moral character is certainly a reason for excluding a child from public education. But the fact that a girl has one child out of wedlock does not forever brand her as a scarlet woman undeserving of any chance for rehabilitation or the opportunity for future education. As in the *Carrington* case the school is free to take reasonable and adequate steps to determine the moral character of a girl before she is readmitted to the school. If the board is convinced that a girl's presence will taint the education of the other students, then exclusion is justified. Nevertheless, the inquiry should be thorough and weighed in keeping with the serious consequences of preventing an individual from attaining a high school education.

In sum, the Court holds that plaintiffs may not be excluded from the schools of the district for the sole reason that they are unwed mothers; and that plaintiffs are entitled to readmission unless on a fair hearing before the school authorities they are found to be so lacking in moral character that their presence in the schools will taint the education of other students.

An order to carry into effect the views of the Court will be entered.