I. V. PATTERSON, Individually, and on behalf of the Estate of his Deceased wife Gussie M. Patterson, as administrator thereof, and on behalf of all other persons similarly situated, Plaintiff,

v.

David MATHEWS, Individually and in his official capacity as Secretary of the Department of Health, Education and Welfare of the United States, Defendant.

Civ. A. No. 75–1337.

United States District Court,
W. D. Pennsylvania.

April 26, 1976.

Douglas Reed, and James E. Mahood, Neighborhood Legal Services, Pittsburgh, Pa., for plaintiff.

Craig R. McKay, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

O. Randolph Bragg, Pennsylvania Legal Service Center, Harrisburg, Pa., for intervenor.

SNYDER, District Judge.

This is an action in which the Plaintiff, I. V. Patterson, challenges on Due Process and Equal Protection bases the constitutionality of a portion of the Social Security Act relating to disability benefits, 42 U.S.C. Section 1383(b) (Title XVI, Section 1631(b))[1] and 20 C.F.R. § 416.542,[2] the effect of which, he claims, is to preclude the spouse and the estate of a deceased recipient from collecting or retaining the Supplemental Security Income benefits (hereinafter SSI) accrued but not paid to the decedent wife during her lifetime. He sues individually and on behalf of the estate of his wife, as the administrator thereof, and on behalf of all other persons similarly situated. Both parties have moved for Summary Judgment.

## I. BACKGROUND.

In January of 1975, the Plaintiff, as a wage earner, and his wife filed for Title II disability benefits. On March 6, 1975, the Social Security Administration denied their respective claims because the husband did not meet the disability requirements and therefore his wife's claim was also unacceptable. Mrs. Patterson filed a timely request for reconsideration of the decision and also filed an application for Title XVI benefits. Mrs. Patterson was determined to be eligible for benefits in April of 1975 but, prior to receiving any payments, Mrs. Patterson died on June 15, 1975. On July 29, 1975, a check was issued by the Social Security Administration to Gussie M. Patterson in the amount of $1,505.70. On August 1, 1975, another check was issued to Gussie M. Patterson for $177.70. Both of these checks were received by the Plaintiff. Mr. Patterson notified the Social Security Administration of his wife's death and was orally directed to return the checks since they could not be issued to her estate, and could not be issued to the Plaintiff due to his ineligibility under 42 U.S.C. § 1382c(b).[3] On October 14, 1975, Plaintiff took out Letters of Administration on his wife's estate.

1. 42 U.S.C. § 1383(b) provides:

"Whenever the Secretary finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall, subject to the succeeding provisions of this subsection, be made by appropriate adjustments in future payments to such individual or by recovery from or payment to such individual or his eligible spouse (or by recovery from the estate of either). The Secretary shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good conscience, or (because of the small amount involved) impede efficient or effective administration of this subchapter."

2. 20 C.F.R. § 416.542 provides:

"(a) *Underpaid recipient alive—underpayment payable.* If an underpaid recipient is alive, the amount of any underpayment due him will be paid to him in a separate payment or by increasing the amount of his monthly payment.

(b) *Underpaid recipient dead—underpayment payable.* If a recipient dies before the amount due him has been paid to him, or before he endorses the check representing the correct payment, the amount of the underpayment may be paid only to his surviving spouse and then only if such spouse was eligible for supplemental security income benefits and was living with the underpaid recipient when he died or was not separated from him for 6 months at the time of death. No underpayment may be paid to the estate of any underpaid recipient, the estate of the surviving spouse, or to any survivor other than the living-with eligible spouse."

3. 42 U.S.C. § 1382c(b) provides:

"For purposes of this subchapter, the term 'eligible spouse' means an aged, blind, or disabled individual who is the husband or wife of another aged, blind, or disabled individual and who has not been living apart from such other aged, blind, or disabled individual for more than six months. If two aged, blind, or disabled individuals are husband and wife as described in the preceding sentence, only one of them may be an 'eligible individual' within the meaning of section 1382(a) of this title."

## II. DISCUSSION.

■ We are met at the outset with the rule of law which provides that this Court has jurisdiction only when administrative remedies have been exhausted (42 U.S.C. § 405(g)). However, in this case the Plaintiff on September 18, 1975 formally requested consideration of his entitlement to the lump sum payment by the District Office, the General Counsel of the Social Security Administration, and the Secretary of Health, Education and Welfare. On September 29, 1975, the Office of the General Counsel refused to rule on Plaintiff's request. On October 10, 1975, the Secretary, through the Commissioner of the Social Security Administration, responded to Plaintiff's request, setting forth the opinion of the Secretary to the effect that any variance from the plain meaning of 42 U.S.C. § 1383 and 20 C.F.R. § 416.542 was not within the discretion of the Secretary, and ruling that the Plaintiff would not be entitled to keep the payments. In light of this, the Stipulation of counsel that "it would be futile for named-plaintiff, I. V. Patterson, to exhaust further administrative remedies under the Social Security Act with respect to his alleged entitlement, or the alleged entitlement of his deceased wife's estate, to Supplemental Security Income benefits due his wife, Gussie M. Patterson, prior to her death" is entirely proper.

Jurisdiction is then found under Section 1631(c)(3) and 205(g) of the Social Security Act, 42 U.S.C. § 1383(c)(3) and 405(g), to review the constitutionality of both 42 U.S.C. § 1383(b) and of Regulation No. 16, 20 C.F.R. § 416.452. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). This proposition is manifestly reasonable since the Secretary has had the opportunity prior to constitutional issue litigation to ascertain that the particular claims involved are not valid for other reasons, or are not allowable under other provisions of the Social Security Act. *Weinberger v. Salfi, supra.*

### THE EQUAL PROTECTION CONTENTION.

The Plaintiff's contention is that the Statute creates two classes of individuals—eligible and ineligible—for in the event that a recipient dies before the amount due to said recipient is paid, the amount of the payment can be made only to a surviving spouse who is eligible for SSI benefits and who is living with the recipient at the time of death.

20 C.F.R. § 416.452 also provides (See Footnote 2):

" . . . No underpayment may be paid to the estate of any underpaid recipient, the estate of the surviving spouse, or to any survivor other than the living-with eligible spouse."

■ It is alleged by the Plaintiff that the effect of these provisions operates to deprive him of accrued property which rightfully belongs to the estate of his deceased wife.[4]

At this point, we must look to the history of the Supplemental Security Income benefits. These supplemental benefits were established to administer Federal cash assistance payments to needy persons who were aged, blind, or disabled. SSI replaced the State administered assistance programs for those aged, blind, or disabled with a federal minimum guaranteed income program administered by the Social Security Administration.

Those States whose level of assistance to the aged, blind, or disabled under prior programs which were higher than the Federal minimum were required by 42 U.S.C. § 1382 note [Pub.Law 93–66 § 212 as amended] to provide a "mandatory state supplement" to those prior recipients' monthly assistance grant, so that they would not be harmed by

---

**4.** A Three-Judge Court need not be convened under 28 U.S.C. § 2282 to determine the Constitutionality of a Federal statute when the complaint requests declaratory relief and not injunctive relief. *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Riddell v. National Democratic Party,* 508 F.2d 770 (5th Cir. 1975); *Triple A Realty, Inc. v. Florida Real Estate Commission,* 468 F.2d 245 (5th Cir. 1972).

the advent of the SSI Program. The Commonwealth of Pennsylvania supplements SSI benefits with payments in the amount of $20 for individual recipients and $30 for couples.

Under 42 U.S.C. § 1382a(b) the amount of benefits under SSI depends on whether the recipient is an "individual" or is an "individual with an eligible spouse". Here, the Social Security Administration determined that the husband was ineligible, but ruled that his wife was an eligible "individual". Because the husband and wife had a low level of income, the deceased was considered by the Social Security Administration to be a needy person eligible for SSI by virtue of disability.

Plaintiff contends that the non-discretionary application of 42 U.S.C. § 1383(b) and its implementing regulation, 20 C.F.R. § 416.452, required denial of payment of the accrued benefits of the deceased recipient to the Plaintiff even though the deceased was categorically eligible only because the Plaintiff himself also was needy.

## THE DUE PROCESS CONTENTION

The Plaintiff contends that the operation of the challenged Section, in establishing two distinct benefited and non-benefited categories of needy persons, creates a conclusive and irrebuttable presumption that the ineligible needy spouses of deceased SSI recipients are less in need of the benefits to which their deceased spouses were entitled than are the eligible spouses. He then contends there is no basis in fact for this presumption, and no legitimate State interest can justify the existence of such a presumption.

■ We believe the proper standard to apply is the traditional "rational basis" test enunciated in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) and recently reaffirmed in *Weinberger v. Salfi, supra*, 422 U.S. at 768, 95 S.Ct. at 2468, 45 L.Ed.2d at pp. 540–542:

"The standard for testing the validity of Congress' Social Security classification was clearly stated in *Flemming v. Nestor*,

363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960):

'Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.'

In *Richardson v. Belcher*, 404 U.S. 78, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971), a portion of the Social Security Act which required an otherwise entitled disability claimant to be subjected to an 'offset' by reason of his simultaneous receipt of state workmen's compensation benefits was attacked as being violative of the Due Process Clause of the Fifth Amendment. The claimant in that case asserted that the provision was arbitrary in that it required offsetting of a state workmen's compensation payment, but not of a similar payment made by a private disability insurer. The Court said:

'If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment.' Id., at 84, 30 L.Ed.2d 231, 92 S.Ct. 254.

Two Terms earlier the Court had decided the case of *Dandridge v. Williams*, 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153 (1970), in which it rejected a claim that Maryland welfare legislation violated the Equal Protection Clause of the Fourteenth Amendment. The Court had said:

'In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*,

220 U.S. 61, 78, 55 L.Ed. 369, 31 S.Ct. 337. "The problems of government are practical ones and may justify, if they do not require, rough accommodations —illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70, 57 L.Ed. 730, 33 S.Ct. 441 . . . . .

'To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard. . . . It is a standard that has consistently been applied to state legislation restricting the availability of employment opportunities. *Goesaert v. Cleary*, 335 U.S. 464, 93 L.Ed. 163, 69 S.Ct. 198; *Kotch v. Board of River Port Pilot Comm'rs*, 330 U.S. 552, 91 L.Ed.1093, 67 S.Ct. 910. *See also Flemming v. Nestor*, 363 U.S. 603, 4 L.Ed.2d 1435, 80 S.Ct. 1367. And it is a standard that is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.' Id. [397 U.S.], at 485–486, 25 L.Ed.2d 491, 90 S.Ct. 1153.

The relation between the equal protection analysis of *Dandridge* and the Fifth Amendment due process analysis of *Flemming v. Nestor* and *Richardson v. Belcher* was described in the latter case in this language:

'A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is "rationally based and free from invidious discrimination." *Dandridge v. Williams*, 397 U.S. 471, 487 [25 L.Ed.2d 491, 90 S.Ct. 1153]. While the present case, involv-

ing as it does a federal statute, does not directly implicate the Fourteenth Amendment's Equal Protection Clause, a classification that meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment. *Cf. Bolling v. Sharpe*, 347 U.S. 497, 499 [98 L.Ed. 884, 74 S.Ct. 693].'

These cases quite plainly lay down the governing principle for disposing of constitutional challenges to classifications in this type of social welfare legislation. . . . ."

Since this case involves not "freedoms guaranteed by the Bill of Rights" (*Dandridge*) but benefits provided by the Statute "in the area of economics and social welfare", the traditional rational basis test governs the validity of the provisions here in question. Thus, the challenged statutory classification must be sustained if there is any rational reason for the classification; and "it is, of course, constitutionally irrelevant whether this reasoning in fact underlay the legislative decision, as it is irrelevant that the section does not extend to all to whom the postulated rationale might in logic apply." *Flemming v. Nestor*, 363 U.S. 603, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960).

■ Under Section 1631(b) of Title XVI of the Social Security Act (42 U.S.C. § 1383(b), see Footnote 1) it is provided that:

"Whenever the Secretary finds that . . . less than the correct amount of benefits has been paid . . . proper adjustment . . . shall . . . be made by appropriate adjustments in future payments to such individual or . . . payment to such individual or his eligible spouse . . . ."

There is the clear stated Congressional intent to restrict the payment of underpayments to the eligible individual or to the eligible spouse as borne out by the report on H.R. 1 at page 155 of the Ways and Means Committee Report, and by the Senate Finance Committee echoing the same reasoning at page 391 of its Report. It was this

legislative background which caused the Secretary to set forth the provisions of Section 416.452(b) of the regulations. Although the SSI Program is one based on need, the Congressional mandate was that only those that were eligible for benefits (aged, blind, or disabled and meeting the income and resources tests) are to receive SSI benefits. Thus, even though an ineligible spouse's income and resources are taken into account in finding the claimant in this case to be an eligible individual under the Act, because Plaintiff is under age 65 and is neither blind nor disabled (under the criteria as set forth in the Act) he cannot receive the underpayment in question.

As was stated in *Dandridge, supra,* 397 U.S., at 485, 90 S.Ct., at 1161, 25 L.Ed.2d at 501–502:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 55 L.Ed. 369, 377, 31 S.Ct. 337. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70, 57 L.Ed. 730, 734, 33 S.Ct. 441. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426, 6 L.Ed.2d 393, 399, 81 S.Ct. 1101."

Therefore, under the standards set forth in *Salfi* and *Dandridge,* there is no violation of Due Process in this case.

### THE MOTION TO INTERVENE

Herman D. Lancaster, individually, and on behalf of the estate of his deceased wife, Audrey L. Lancaster, as administrator thereof, and on behalf of all others similarly situated has, through the Pennsylvania Legal Services Center in Harrisburg, Pennsylvania, and O. Randolph Bragg, Esquire, moved this Court for leave to intervene in this action as a party plaintiff in order to assert the claims of his Complaint. Suffice it to say at this point, that there has not been an exhaustion of administrative remedies with respect to this claim and, therefore, the Motion to Intervene must be denied.

### REQUEST FOR CLASS ACTION CERTIFICATION

■ Plaintiff here, not unlike the plaintiff in *Salfi, supra,* has been notified by the Secretary that further exhaustion on his part would be futile, and thus has satisfied the requirement that he exhaust his administrative remedies before proceeding in the Federal Courts. The same cannot be said as to the class which the Plaintiff seeks to represent since not even an allegation has been made that any class member pursued administrative remedies to exhaustion, and the Request for Class Action Certification will be denied.

The Supreme Court in *Salfi, supra,* noted the necessity of exhaustion (422 U.S. at p. 765, 95 S.Ct. at p. 2467, 45 L.Ed.2d at pp. 538–539):

"... Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review. *See, e. g., McKart v. United States,* id. [395 U.S. 185], at 193–194, 23 L.Ed.2d 194, 89 S.Ct. 1657 . . . ."

With regard to finding that the class could not satisfy requirements of jurisdiction, the Court in *Salfi* held that since other sources of jurisdiction were foreclosed by Section 405(h), the District Court was without jurisdiction. (422 U.S. at 763–765, 95 S.Ct. at 2466, 45 L.Ed.2d at 537–538).

The Court in *Mansfield v. Weinberger*, 398 F.Supp. 965 (D.D.C.1975), quoted this same language as it denied a motion for class certification in another Social Security case (at p. 966):

"Also before the Court is a timely motion by plaintiffs for class action certification. Fed.R.Civ.P. 23(c); Local Rule 1–13(b). The motion must be denied since

the complaint is deficient in that it contains no allegations that (the class members) have even filed an application with the Secretary, much less that he has rendered any decision, final or otherwise, review of which is sought. The class thus cannot satisfy the requirements for jurisdiction under 42 U.S.C. § 405(g). *Weinberger v. Salfi, supra,* 422 U.S. 749, 95 S.Ct. at 2466 [45 L.Ed.2d 522]."

In addition to enunciating the necessity for exhaustion by all plaintiffs and class members, the *Salfi* Court expressed doubt as to the applicability of class actions under any circumstances in claims arising under the Social Security Act (422 U.S. at p. 762–763, 95 S.Ct. at p. 2465–2466, 45 L.Ed.2d at p. 537, Footnote 8).

"Since § 405(h) is the basis for district court jurisdiction, there is some question as to whether it had authority to enjoin the operation [of the statute]. Section 405(h) accords authority to affirm, modify or reverse a decision of the Secretary. It contains no suggestion that a reviewing court is empowered to enter an injunctive decree whose operation reaches beyond the particular applicants before the court. . . ."

In light of the above, this Court will enter an order granting the Secretary's Motion for Summary Judgment, and denying Plaintiff's Motion for Summary Judgment.